William Brady TRIGG,
Petitioner-Appellant,

v.

STATE OF TENNESSEE,
Respondent-Appellee.

No. 74–1515.

United States Court of Appeals,
Sixth Circuit.

Dec. 11, 1974.

Certiorari Denied Feb. 18, 1975.

See 95 S.Ct. 1148.

Robert A. Lanier, Memphis, Tenn. (Court appointed), for petitioner-appellant.

Milton P. Rice, Atty. Gen. of Tenn., Nashville, Tenn., W. Henry Haile, David L. Raybin, Nashville, Tenn., for respondent-appellee.

Before CELEBREZZE, PECK and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

The petitioner, William Brady Trigg, appeals the dismissal of his petition for a writ of habeas corpus. After conducting a full evidentiary hearing, the district court found that Trigg had not been denied his right to a speedy trial and thus was not entitled to habeas corpus relief. Involved are the dimensions of the Sixth Amendment right to a speedy trial when asserted by a federal prisoner under a detainer for the alleged commission of a separate state crime. The facts of the litigation are lengthy and complicated but a summary of the pertinent events is given below.

In July 1964 the petitioner was arrested in Chicago, Illinois, and charged with violating the Federal Narcotics Act. While the petitioner was free on bond in Chicago, he was indicted in November 1965 by the Grand Jury of Shelby County (Memphis) Tennessee for armed robbery. Trigg did not become aware of this indictment until several years later. In June of 1966, Trigg was convicted on the federal drug charges. He was sentenced to six concurrent twenty-year terms and incarcerated in the United States Penitentiary at Leavenworth, Kansas. It was not until September 1967 that the Tennessee officials discovered that Trigg had been so incarcerated. Upon communicating with prison authorities, Tennessee officials learned that Trigg was eligible for release in 1979 but was already subject to an Illinois detainer. The State of Tennessee promptly placed its own detainer on the petitioner.

Soon thereafter, prison officials at Leavenworth informed Trigg of the Tennessee detainer. According to the petitioner's testimony, he wrote various Tennessee state officials inquiring about the detainer and the underlying charges. At

some point, Trigg wrote the office of the Shelby County District Attorney. In March of 1968, an administrative assistant in this office replied to the petitioner's letter, informing him of the District Attorney's policy to return for trial all persons charged with committing state crimes in Shelby County. Nine months later, in January 1969, a motion was filed in Trigg's behalf to dismiss the state court charge against him on the ground that he had been denied the right to a speedy trial.

By letter dated February 11, 1969, the Shelby County District Attorney initiated what became protracted negotiations with the federal prison authorities for the return of Trigg to Tennessee to stand trial on the Shelby County indictment. For the next two years, officials of the state and federal government were deadlocked as to the appropriate legal procedure for the return of Trigg to Tennessee. First, because of claimed insufficient funds, the State was reluctant to pay for United States Marshals to accompany and guard Trigg on his trips to and from Tennessee and during his trial. Instead, Tennessee sought permission to use its own agents to transport Trigg. Secondly, the State wanted the petitioner to sign a waiver of extradition before it would endeavor to take custody of him. As early as May 27, 1969, the State was informed by the federal authorities that it was established policy that only United States Marshals could guard a federal prisoner while away from the institution and, furthermore, that it was unnecessary to require a waiver of extradition when proceeding under a writ of habeas corpus ad prosequendum. Nevertheless, the state officials persisted in their position that Trigg would be required to waive extradition. In the summer of 1969, federal prison authorities presented Trigg with the waiver form, but he refused to sign it.[1]

A few months later, Trigg commenced a federal habeas corpus action in the district court in Kansas, an action in which the Shelby County District Attorney's Office intervened. Trigg's petition was dismissed and the dismissal was affirmed on appeal.[2] Trigg fared no better in Shelby County Criminal Court as his January 1969 motion to dismiss was summarily overruled the following October.[3]

1. The waiver of extradition form was presented directly to Trigg by prison officials and did not go through his counsel, the Public Defender of Shelby County. (There was some evidence that Trigg was unaware of the appointment of counsel and hence did not realize he had legal representation available to advise him.) The Tennessee Court of Criminal Appeals in its opinion dated May 5, 1970, indicated its view that any waiver request should have been made to Trigg's counsel. The State contends that the petitioner's refusal to sign the form indicated that he was not sincere in his assertion of his right to a speedy trial.

2. In Trigg v. Moseley, 433 F.2d 364 (10th Cir. 1970), the Court of Appeals affirmed the district court's dismissal of the habeas corpus action filed by Trigg seeking the removal of the Tennessee detainer. As indicated above, Trigg had filed in state court a motion to dismiss claiming a denial of his right to a speedy trial. This motion was summarily rejected, but the decision was overturned and remanded by the Court of Criminal Appeals. Because Trigg's claim was due a reconsideration by the state courts, the Tenth Circuit decided that he had not exhausted his state remedies pursuant to 28 U.S.C. § 2254. In response to a request by the State of Tennessee for the issuance of a writ of habeas corpus ad prosequendum, the court held that such a writ had to issue from the state and not the federal court.

3. In its first consideration of this case, the Tennessee Court of Criminal Appeals on May 5, 1970, reversed the summary dismissal of Trigg's motion and remanded the case to the trial court. (It was this opinion to which the Tenth Circuit referred. See n. 2, supra.) Examining the facts in light of Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), the court concluded that up to the time of the dismissal (October 1969) the State had not made a diligent, good faith effort to return the petitioner for trial. It also criticized but did not condemn the State's attempt to have Trigg sign a waiver of extradition without first consulting his counsel of record. On December 6, 1972, the Court of Criminal Appeals again rendered an opinion involving Trigg. This appeal was taken after Trigg was convicted of the armed robbery charge. He challenged the weight and sufficiency of the

During 1970, state efforts appear to have subsided but they were revived in the spring of 1971.

Apparently proceeding under the Interstate Agreement on Detainers Act (18 U.S.C. Appendix),[4] the State finally succeeded in returning Trigg with its own agents,[5] in the summer of 1971. He was then tried and convicted in the Tennessee state court on December 8, 1971, and he was given a ten year sentence to run concurrently with the federal and Illinois sentences. This conviction was affirmed a year later by the Tennessee Court of Criminal Appeals. In August 1973, the petitioner initiated the present habeas corpus action in the court below. The denial of relief by the district court resulted in the appeal now before us.

The Sixth Amendment to the United States Constitution provides that all criminal defendants are entitled to a speedy trial. In 1967 the requirement was held to be applicable to state criminal proceedings through the Fourteenth Amendment.[6] Two years later, the Supreme Court held that a state must "make a diligent, good-faith effort" to return a federal prisoner who demands a speedy trial of any pending state charges. Smith v. Hooey, 393 U.S. 374, 383, 89 S.Ct. 21, 575 L.Ed.2d 607 (1969). In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court made its most thorough examination of the right to a speedy trial. The Court eschewed an inflexible rule and instead adopted an ad hoc approach requiring the balancing of at least four factors: the length of the delay, the defendant's assertion of the right, the reason for the delay, and the prejudice to the defendant. Id. at 530, 92 S.Ct. 2182. The Court emphasized that none of these factors was "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Id. at 533, 92 S.Ct. at 2193; see Moore v. Arizona, 414 U.S. 25, 26, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). On the contrary, these were but four related factors to be considered along with all the other relevant circumstances. Barker, 407 U.S. at 533, 92 S.Ct. 2182. In order to assess the merits of the petitioner's claim, we must analyze the facts of this case in view of the Barker factors.

Length of delay

 The parties disagree about the precise point in time when the right at-

---

evidence and asserted that he had been denied his right to a speedy trial. In a lengthy reconsideration of the speedy trial issue, the court found no constitutional violation. As it assessed the factors, the court reasoned that the State had made a diligent, good faith effort to return Trigg; that the petitioner had not made a strong showing of prejudice; and that Trigg's assertion of his right did not amount to an unequivocal demand.

4. The United States became a party to the Interstate Agreement on Detainers when Congress enacted the compact on December 9, 1970. 18 U.S.C. Appendix. The Act went into effect ninety (90) days later. This enactment specifically deals with the return of a federal prisoner to a state court to stand trial. The agreement has replaced the other methods available to a state for obtaining temporary custody of a defendant. Prior to the adoption of this Act, the primary method for acquiring custody of a federal prisoner was for a state court to issue a habeas corpus ad prosequendum. Huston v. Kansas, 390 F.2d 156 (10th Cir. 1968); see n. 2 supra. Once federal authorities received this writ, they generally honored it provided satisfactory arrangements were made for the payment of expenses. Smith, 393 U.S. at 381, 89 S.Ct. 575. Another possible procedure was to make a request to the United States Attorney General pursuant to 18 U.S.C. § 4085. That section provides for the return of a state prisoner at the expense of the federal government if the Attorney General "finds it in the public interest to do so." This method has not been frequently agreed to by the United States. Id. at 381, 89 S.Ct. at 579. There is evidence in the record that the State of Tennessee did attempt to proceed under § 4085 but to no avail.

5. The record does not disclose whether Trigg ever waived extradition. In early June of 1971, the State sent its own agents to Leavenworth to pick up the petitioner, but because they failed to comply with a provision of the Detainer Act, they returned without him. The agents went back at the end of the month and finally obtained custody of Trigg.

6. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

tached and from which the delay should be measured. We do not think it essential to our decision to resolve this dispute since the length of delay is primarily a "triggering mechanism." *Barker*, 407 U.S. at 530, 92 S.Ct. 2182. "The passage of time in and of itself does not constitute denial of a speedy trial." United States v. Beard, 381 F.2d 325, 328 (6th Cir. 1967); *see* United States v. La Borde, 496 F.2d 965 (6th Cir. 1974) (per curiam). When considering the type of crime involved, the delay must be long enough that some prejudice can be presumed. *Barker*, 407 U.S. at 530–531, 92 S.Ct. 2182, 33 L.Ed.2d 101. Once this threshold determination has been made, the other mitigating or aggravating factors are weighed in order to decide the constitutionality of the delay. *See* Wallace v. Kern, 499 F.2d 1345, 1349–1350 (2d Cir. 1974). In this case the State of Tennessee admits to a delay of approximately two years.[7] Because of the nature of the crime involved, we think that this delay is sufficiently long to compel the Court to examine the other factors relevant to the right to a speedy trial. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182, 33 L.Ed.2d 101.·

### Reason for the delay

The main reason for the lengthy delay was the State's effort to return the petitioner for trial at the least possible expense to itself.[8] The duration of

the delay was extended further by the State's inability to agree with the federal government about the proper legal procedure necessary to effectuate the return. The State of Tennessee urges that because the law with regard to speedy trial was unsettled during that period, it was uncertain about the scope of its duty to a federal prisoner. As a result, the State argues that it had neither the funds nor the methods to return the petitioner immediately upon his request. We note that the various state officials were not consistent in their efforts to gain custody of Trigg.[9] While the lack of sufficient funds may have contributed to the delay, we cannot say that such lack was the sole reason. *Cf.* Beck v. United States, 422 F.2d 1037 (5th Cir. 1971). The State acted in good faith, but it did not make a particularly diligent attempt to settle its two year controversy with federal prison officials. Thus the State of Tennessee must bear the primary responsibility for the inordinate delay in returning the petitioner for trial.

### The defendant's assertion of the right

There is no real dispute that the petitioner asserted his right to a speedy trial when he filed his motion to dismiss in the Shelby County Criminal Court.[10] This formal motion, his earlier letters to state officials inquiring about the detainer, an alleged "informal" motion to dis-

---

**7.** The State argues that this admitted delay can be reduced still further by considering Trigg's failure to cooperate and by the federal government's "footdragging." We are not convinced that the United States was less than diligent in assisting the State. As early as May 27, 1969, federal prison authorities informed the State of the necessary procedure for obtaining temporary custody of the petitioner.

**8.** There is no evidence in the record regarding the difference in the cost to the State between using United States Marshals or its own agents.

**9.** In its first letter to Leavenworth on February 11, 1969, the State asked that it be allowed to use its own agents because it would be less expensive. Three months later the State wrote that it would pay for the United

States Marshals provided Trigg would waive extradition. In its appearance in the federal habeas corpus action in Kansas, the State again sought permission from the district court to use its own agents but apparently did not require a waiver of extradition. A year later in a letter from the Tennessee Attorney General's Office to the Shelby County District Attorney's Office, an assistant attorney general stated that Tennessee would pay for the use of United States Marshals.

**10.** The State sought to strike Trigg's motion to dismiss because of his failure to cooperate by refusing to waive extradition. In light of his alleged attempts to contest the detainer in 1968 and his several court actions to the same end, and considering the circumstances surrounding the waiver, we do not attach much significance to the claim of non-cooperation.

miss and a federal habeas corpus action brought in Kansas, all indicate Trigg's desire to exercise his right to a speedy trial. *See generally Barker,* 407 U.S. at 523–530, 92 S.Ct. 2182.

### Prejudice to the defendant

 The remaining determination is the amount of prejudice suffered by the defendant because of the delay of his trial. Like the other criteria above, prejudice is to be weighed according to the factual circumstances of the case. *Barker,* 407 U.S. at 532–533, 92 S.Ct. 2182. Of the four factors to be assessed, prejudice to the defendant is the most critical one. *United States v. Reynolds,* 489 F.2d 4, 7 (6th Cir. 1973). "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker,* 407 U.S. at 532, 92 S.Ct. 2182, 2193. These interests of the defendant are: to prevent oppressive pretrial incarceration; to minimize anxiety and concern of the accused; and to limit the possibility that the defense will be impaired. *Ibid.*

According to the *Barker* decision, the most important of these interests is the possible impairment of a defense. At the evidentiary hearing, Trigg testified that had he been brought to trial more promptly, he would probably have been able to establish his whereabouts during the period in question. Yet, this vague allegation of a potential alibi defense does not indicate any serious injury to the petitioner's interests.[11] By contrast, the defendant in Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), was definitely prejudiced by the death of his purported alibi witness who died during the long delay. In his motion to quash the information, Dickey alleged both the anticipated testimony and the specific identity of the deceased witness. *Id.* at 35 n. 5, 90 S.Ct. 1564; *cf. United States v. Martinez,* 498 F.2d 464, 465–466 (6th Cir. 1974).

The Supreme Court in *Barker* identified a second interest as the prevention of oppressive pretrial incarceration. This is inapposite here because the petitioner was already serving a federal sentence when he began to contest the state detainer. However, the Supreme Court has recognized that convicted defendants may suffer prejudice peculiar to their situation. First, an outstanding detainer may subject the defendant to tighter security or may foreclose him from receiving the benefits of parole and rehabilitation. *See Strunk v. United States,* 412 U.S. 434, 439, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *Moore,* 414 U.S. at 27, 94 S.Ct. 188. According to the petitioner, he was deprived of better living accommodations and job training because of the Tennessee detainer. However, we find that he was also subject to an outstanding Illinois detainer that was only recently dismissed, several years after his trial on the Shelby County offense. Since there was no showing that two detainers were any more prejudicial to the petitioner's privileges and opportunities than a single one, we cannot attribute any significant

---

11. We are not unmindful of the recent decision in Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) in which the Supreme Court said that an affirmative showing of prejudice was not required, at least with respect to any potential defense.

12. In Tennessee, armed robbery is punishable by life imprisonment or by confinement "for any period of time not less than ten (10) years." Tennessee Code Annotated (T.C.A.) § 39–3901. Recent cases have held that the Indeterminate Sentence Law (T.C.A. §§ 40–2707—40–2710) does not apply to armed robbery, and thus the jury is empowered to fix a determinate sentence as punishment. *See* State ex rel. Quinn v. State, 2 Tenn.Cr.App. 82, 451 S.W.2d 701 (1969); State ex rel. Crumpler v. Henderson, 1 Tenn.Cr.App. 47, 428 S.W.2d 800 (1968). Furthermore, because the maximum sentence for this offense is greater than ten years in prison, the trial judge does not have the power to suspend an armed robbery sentence and place the defendant on probation. T.C.A. § 40–2901. The only discretion a trial judge can exercise after an armed robbery conviction is to decide whether the sentence should run concurrently or consecutively with any other prison term. T.C.A. § 40–2711; *see* United States v. Rucker, 150 U.S.App.D.C. 314, 464 F.2d 823, 826 (1972). *But see* United States v. Cabral, 475 F.2d 715, 719–720 (1st Cir. 1973).

prejudice to the mere existence of the Tennessee detainer.

A defendant already in prison also can be injured by a trial delay that prevents him from receiving a sentence at least partially concurrent with the one he is serving. *See Smith*, 393 U.S. at 378, 89 S.Ct. 575. We recognize that a defendant who is in prison has a significant interest in serving concurrently any other sentences he might have. However, in this case this is a matter of degree since Trigg's Tennessee sentence was made to run concurrently with his federal time. The petitioner's complaint is that had he been tried sooner, more of his sentence would have been served concurrently. We do not consider this claim to be unduly speculative in light of the Tennessee law at the time of sentencing.[12] The petitioner was prejudiced in that he probably did lose some concurrent time, but he was not completely denied the possibility of concurrent sentences. *See Smith*, 393 U.S. at 378, 89 S.Ct. 575.

The last interest identified by the Supreme Court was the minimization of the anxiety and concern of the accused. *Barker*, 407 U.S. at 532, 92 S.Ct. 2182; *see Smith*, 393 U.S. at 379, 89 S.Ct. 575. This Court, of course, recognizes that an outstanding detainer may have a depressive effect upon a defendant, but in light of the Illinois detainer in this case, we find that only minimal prejudice was due to the Tennessee indictment and detainer.

The petitioner was forced to wait at least two years for his trial because of the State's good faith but ineffective efforts to return him to Shelby County. There was no real justification for this delay and the defendant was probably prejudiced in some degree by it. Yet on balance we conclude that the petitioner was not denied his right to a speedy trial.[13]

Affirmed.

13. According to the district court's opinion, Trigg has already been released from Leavenworth after serving seven years and four months of his federal sentence; and the State

of Illinois has dismissed its detainer against him. As a result, the district judge ordered Trigg turned over to Tennessee authorities to begin serving his ten year sentence.