**UNITED STATES of America,
Plaintiff,
v.
Douglas LOUZON, Defendant.
Crim. A. No. 49229.**

United States District Court,
E. D. Michigan, S. D.
April 18, 1975.

William D. Richards, Detroit, Mich., for plaintiff.

Gershwin Drain, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This motion arises from the government's attempt to prosecute the defendant for alleged violation of probation. The defendant has filed what has been labeled a motion to dismiss [the] probation violation. The gravamen of the defendant's motion, however, is to quash the warrant under which the defendant was arrested on February 13, 1975. The uncontroverted facts pertinent to this motion are as follows:

On June 21, 1973, the defendant was sentenced by this court to the custody of the Attorney General for two (2) years for violating 18 U.S.C. § 4, but the execution of the sentence was suspended and the defendant was placed on three (3) years probation. At that time the defendant was already on parole from the State of Michigan.

Although the defendant was available to report to the United States Probation Department from June 21, 1973, to September 11, 1973, he allegedly failed to report to the Probation Department on July 9, 1973, which was in violation of his probation conditions.

On September 11, 1973, the defendant was arrested and held on various State charges. He was convicted on these various charges in State court on September 29, 1973, and sentenced to a total of ninety (90) days confinement in the Detroit House of Correction and one (1) year's probation. His prior parole for a previous State offense was also revoked as a result of these convictions. Upon the completion of his ninety (90) day sentence in the Detroit House of Correction, he was transferred on or about December 26, 1973, to the State Prison in Jackson, Michigan, to serve his sentence for parole revocation.

After learning of the defendant's convictions in the State court on September 29, 1973, the United States Probation Department in this district recommended revocation of the defendant's probation, imposed by this court on June 21, 1973. On December 12, 1973, this court issued a warrant for the arrest of the defendant. The defendant was not, at that time, arrested and brought before the court. Instead,

based on the warrant issued by the court, the Probation Department, through the United States Marshal, then requested that the State authorities allow a federal detainer to be lodged against the defendant at the State Prison in Jackson, Michigan. Based on the issuance of the warrant, the State granted the request. The defendant wrote his federal probation officer at least once during his incarceration at the State Prison in Jackson, Michigan, requesting the detainer be lifted, but the request was denied.

On February 13, 1975, immediately before the defendant's State sentence for his parole revocation was to expire, he was turned over to the United States Marshal, pursuant to the federal detainer and warrant for his arrest. Thus, the arrest warrant, issued December 12, 1973, was not executed until that day, approximately fourteen (14) months after it was issued by the court. During this fourteen (14) month period, the Probation Department had actual knowledge of the location of the defendant, and deliberately withheld execution of the issued arrest warrant until the defendant had completed his State sentence. The filing of the detainer by the Probation Department and the withholding of any action until the defendant had completed his State sentence was done pursuant to a long standing policy of the Probation Department, and was not the result of any mistake or inadvertence.[1]

The government contends that, although it generally does not approve of this policy of the Probation Department, the defendant has not demonstrated any resultant prejudice from the policy, or that the delay in the execution of the arrest warrant has fatally tainted the probation violation proceeding.

The issue presented in this motion is whether the Probation Department's policy of deliberately delaying prosecution for alleged probation violations, by withholding execution of a previously issued arrest warrant, based on the alleged violation, and filing a detainer, violates the defendant's right to a speedy trial under the Sixth Amendment. Framed in this fashion, the issue appears to be one of first impression in the federal courts.

I.

18 U.S.C. § 3653 provides that the court for the district in which the probationer is or has been supervised may issue a warrant for his arrest for a violation occurring during the probation period at any time during that period or at any time within the maximum probation period permitted by law, i. e. five (5) years. In the present case the warrant was executed well within the probation period. There is no language in the statute, however, which places a time limitation on when the warrant must be executed. The statute only provides that upon apprehension under a timely warrant the probationer shall be brought before the court "as speedily as possible *after arrest* (emphasis supplied) . . . ." In this respect, the laws are not dissimilar to the parole statutes which impose a time limitation for the issuance of a warrant and for the retaking of a prisoner who has been charged with violating parole, but are silent as to the period allowable for execution.[2] Accordingly, the question as

---

1. The United States Attorney's Office for this district represented, on behalf of the local Probation Department, that this procedure is in conformance with a nationwide policy of the United States Probation Department, and is not merely a local policy.

2. The analogous parole statute, 18 U.S.C. § 4205, provides:
 A warrant for the retaking of any United States prisoner who has violated his parole, may be issued only by the Board of Parole or a member thereof and within the maximum term or terms for which he was sentenced. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and the time the prisoner was on parole shall not diminish the time he was sentenced to serve.

to the period allowable for the execution of the probation warrant is not contemplated by the statute or its legislative history.[3]

The peripheral case law pertinent to this issue is also sparse and inconclusive. Only two previous cases have confronted the issue of whether an unreasonable delay in the execution of a probation violation warrant invalidated the warrant. In United States v. Gernie, 228 F.Supp. 329 (S.D.N.Y.1964), a probation violation warrant was executed some eleven (11) years after its issuance. During this period, the probationer had lived at the same residence and made no attempt to conceal his whereabouts. The Probation Department had made no attempt to execute the warrant or locate him. The *Gernie* court, however, was faced with the threshold issue, not present in this case, of whether the court still had subject matter jurisdiction over the probation proceedings since the probationary period had expired. The issue depended on the continuing validity of the warrant, which ordinarily extends the court's jurisdiction beyond the five (5) year time limit of 18 U.S.C. § 3653. In confronting the jurisdictional issue, and explicitly avoiding the constitutional issue this court must face in the present case, the *Gernie* court held that it lacked jurisdiction over the probationer under 18 U.S.C. § 3653. *Id.* at 339. The court reasoned that jurisdiction does not continue indefinitely merely because a warrant for arrest for violation of probation was timely issued, and that unless the warrant was executed within a reasonable time after issuance the warrant loses its force and vitality. *Id.* at 337. The court also felt the delay in Gernie's case was unreasonable because the probationer had done nothing to prevent the execution of the warrant and because the Probation Department had not been diligent in attempting to execute the warrant. *Id.* at 338–339.

A contrary holding was reached in United States v. Bartholdi, 453 F.2d 1225 (9th Cir. 1972). In that case the defendant began serving a two (2) year federal probationary sentence in September, 1968. Sometime in 1969, he was convicted in State court of a felony, and a probation violation detainer was placed with the State authorities. At the same time a probation violation warrant had been issued, but not executed. After repeated requests by the defendant for a hearing on the petition for revocation, the warrant was executed and the hearing was conducted in January, 1971. Probation was revoked and the defendant was sentenced to four (4) months custody, which would run consecutive to his State sentence. The Court of Appeals upheld this procedure, and explicitly allowed a delay in the execution of the probation violation warrant pending the outcome of criminal charges and sentences entered thereon, so long as there was no unreasonable delay.

While the facts of *Bartholdi* are closely analogous to the facts in the present case, the court's reasoning is far from satisfactory. The cursory opinion rests almost entirely on the previous case of Barr v. Parker, 453 F.2d 865 (9th Cir. 1971), in which it was held that a delay under similar circumstances in the execution of a *parole* violation warrant was acceptable. Moreover, *Barr,* in turn, was decided before the landmark parole revocation decision in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which held, *inter alia,* that the parolee was entitled to his revocation hearing within a reasonable time after being taken into custody. Thus, the legal authority on which *Bartholdi* rests is subject to question.[4]

---

3. H.R.Rep.No.2766, 80th Cong., 2d Sess. (1948); 2 U.S.Code Cong.Service (1948) at 2061, and H.R.Rep.No.3762, 81st Cong., 1st Sess. (1949); 2 U.S.Code Cong.Service (1949) at 1248.

4. At present there are several post *Morrissey* cases pending in various United States Courts of Appeal which present the question whether a parolee who has committed a crime while on parole and has been sen-

The result of this inquiry is that neither the applicable statutory language nor case law directly answers the issue posed in the present case.

## II.

The Sixth Amendment provides that "[in] all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." Traditionally, the protection afforded by this Amendment has been "activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution." United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). Invocation of the right need not await indictment, information, or other charge but begins with the actual restraints imposed by arrest if it precedes the formal preferring of charges. *Id.* at 307, 313, 320, 322, 92 S.Ct. 455.[5] The fact a warrant was not issued pursuant to an indictment or information in this case, however, does not mean that Sixth Amendment protections should not extend to a probationer after a court has issued the warrant for his arrest.

In the case of an alleged probation violation the sentencing Judge, upon a showing of probable cause by the Probation Department and issuance of a warrant for the probationer's arrest,[6] realistically stands in the same decision-making position as a Grand Jury which, after a showing of probable cause by the government, decides to issue an indictment. In each situation the decision-making party has, by its action, initiated criminal proceedings and instructed the government to proceed in its prosecution of the "accused". To reason otherwise would reduce the inquiry into the triggering of Sixth Amendment protections to one in which the form of the accusation, i. e., indictment, information, or arrest, would predominate over the

---

tenced to prison on that offense must be granted a parole revocation hearing at the beginning of his new prison sentence or whether such a hearing can be postponed. Two such cases have already been decided. In both Cook v. United States Attorney General, 488 F.2d 667 (5th Cir. 1974) and Small v. Britton, 500 F.2d 299 (10th Cir. 1974), the courts held that the parole revocation hearings may be postponed until completion of the intervening sentence. The applicability of those cases to the present issue is limited, however, to any due process question, since there is no parole statute similar to 18 U.S.C. § 3653 and its "as speedily as possible after arrest" language.

The only helpful authority from the Sixth Circuit appears to be Greene v. Michigan Department of Corrections, 315 F.2d 546 (1963). In that case the Court of Appeals reversed and remanded for an evidentiary hearing the District Court's Order denying a habeas corpus petition which alleged an unreasonable nine (9) year delay in the execution of a parole violation warrant. The Court of Appeals held that when there has been a violation of the conditions of parole, the parole authorities, if they desire to take action on it, should proceed with "reasonable diligence" to issue and execute a warrant for the arrest of the parolee. *Id.* at 547. Upon remand, the District Court granted the writ. On appeal, the Court of Appeals again reversed, this time holding that the record at the hearing failed to show actual knowledge by the parole authorities of the parolee's whereabouts. The court held that without a showing of such actual knowledge, the parole authorities cannot be charged with deliberately declining to return him to prison. Greene v. Michigan Department of Corrections, 6 Cir., 339 F.2d 139 (1964).

5. Justices Douglas, Brennan, and Marshall disagreed with this reasoning, arguing that the "right to a speedy trial is the right to be brought to trial speedily which would seem to be as relevant to pre-indictment delays as it is to post-indictment," but concurred because they did not think the guarantee was violated under the facts of the case. *Id.* 404 U.S. at 326, 328, 92 S.Ct. at 467.

6. "The standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed. 2d 142 (1964). See also Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879 (1949)." Gerstein v. Pugh, 420 U.S. 103, 111, 95 S.Ct. 854, 862, 43 L. Ed.2d 54 (1975).

realistic status of the defendant in the eyes of the government and the judicial system. The protection extends to one "accused" of a crime, no matter what form the semantic designation may take.

██ A fourteen (14) month delay in arresting a person after being indicted would certainly weigh heavily against the government as a possible denial of Sixth Amendment protections. See Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).[7] The same result should attach with equal force to such a delay in arresting a person charged with violating probation.

### III.

██ Since this court holds the defendant was "accused" under the Sixth Amendment,[8] it is next necessary to determine whether the Probation Department's policy of deliberately withholding execution of a previously issued arrest warrant, concomitant with the filing of a detainer on the defendant, violated the defendant's right to a speedy trial.

██ In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court made its most thorough examination of the right to a speedy trial. In eschewing an inflexible rule, the Court adopted an *ad hoc* approach requiring the balancing of at least four factors: the length of the delay, the defendant's assertion of the right, the reason for the delay, and the prejudice to the defendant. *Id.* at 530, 92 S.Ct. 2182. The defendant's right to a speedy trial in this case must, therefore be evaluated in light of these factors.

*Length of delay*

██ Although the passage of time does not necessarily constitute denial of a speedy trial, United States v. Beard, 381 F.2d 325, 328 (6th Cir. 1967); Trigg v. Tennessee, 507 F.2d 949, 953

(6th Cir. 1974), the length of delay factor is a "triggering mechanism", *Barker, supra*, 407 U.S. at 530, 92 S.Ct. 2182, which determines whether the inquiry into any possible denial should proceed further. When considering the type of offense involved, the delay must be long enough that some prejudice can be presumed. *Id.* at 530–531, 92 S.Ct. 2182. Once this threshold determination has been made, the other mitigating or aggravating factors are weighed in order to decide the constitutionality of the delay. See Wallace v. Kern, 499 F.2d 1345, 1349–50 (2d Cir. 1974), Trigg v. Tennessee, *supra*, at 953. In the present case, the Probation Department admits there was a delay of approximately fourteen (14) months from the time the warrant was issued by the court until it was executed. Because of the nature of the offense involved, alleged probation violation, the court feels this delay is sufficiently long to compel an examination of the other factors pertinent to the right to a speedy trial. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182.

*Reason for the delay*

The Probation Department's reason for the lengthy delay in this case is because of their "policy" of not executing warrants for alleged probation violation until the defendant has completed any prior sentence he may be presently serving. The Probation Department also filed a detainer on the defendant in order to insure his presence when they decide to execute the previously issued warrant.

██ This policy is highly suspect not only in this case, where the delay was fourteen (14) months, but also because it appears to be applied in every situation like the present case. Delay is inherent in the *policy* regardless of the varying time periods to which it may apply. Under this policy the Probation

---

7. See also Rost v. Municipal Court, 184 Cal. App.2d 507, 7 Cal.Rptr. 869, 85 A.L.R.2d 974 (1960), where the court held that an undue delay between the filing of the complaint and the arrest violates the defendant's right to a speedy trial.

8. Because of this holding, the court will not consider any possible Fifth Amendment violations which might otherwise be pertinent to this case. United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

Department is knowingly subjecting each defendant to delay in the resolution of his alleged probation violation. Such a policy weighs heavily against the government in this case, and in all others in which the policy is applied, because it does not comport with the constitutional principal which "places the primary burden on the courts and the prosecutors to assure that cases are brought to trial". *Id.* at 529, 92 S.Ct. at 2191.

*The defendant's assertion of the right*

 It is undisputed that the defendant in this case did not explicitly assert his right to a speedy trial. This fact, however, should not weigh heavily against the defendant. In *Barker* the Court recognized that the traditional demand-waiver doctrine should not apply to speedy trial issues because of the "uncertainty as to when and under what circumstances it must be asserted or . . . be deemed waived". *Id.* The present case is the best example of a defendant's uncertainty as to whether he had a right to a speedy trial. Until this case the issue had not been squarely confronted by a federal court. Moreover, the defendant did request that the detainer filed on him be lifted. If any inference can be drawn from this request in the present case, it must be that the defendant was concerned about his status vis-a-vis the detainer and from that point the obligation shifted to the Probation Department to decide whether to lift the detainer and, by necessity, execute the warrant and prosecute the defendant for alleged probation violation, or deny the request knowing that such denial would delay the resolution of the alleged offense. The denial of the defendant's request to lift his detainer in this case inferentially weighs against the government in balancing the conduct on both parties under this factor. *Id.* at 530, 92 S.Ct. 2182.

*Prejudice to the defendant*

 Of the four (4) factors to be assessed, prejudice to the defendant is the most critical one. United States v.

Reynolds, 489 F.2d 4, 7 (6th Cir. 1973); Trigg v. Tennessee, *supra*, at 954. Any prejudice, of course, "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect". *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. These interests of the defendant are: to prevent oppressive pretrial incarceration; to minimize anxiety and concern of the accused; and to limit the possibility that the defense will be impaired. *Id.*

The Court, in *Barker*, felt the most important of these interests is the possible impairment of a defense.

 In two cases, the Supreme Court has already held that the speedy trial guarantee has been violated by States which preferred criminal charges against persons, who were already incarcerated in prisons of other jurisdictions following convictions on those other charges, when those States ignored the defendant's requests to be given prompt trials and made no effort to obtain custody of the prisoners for purposes of trial. Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). In *Smith, supra*, the Court discussed the various ways in which a defendant is prejudiced by a policy of holding an issued indictment in abeyance until the defendant has completed his present term of incarceration.

"At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from 'undue and oppressive incarceration prior to trial.' But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly, under procedures now widely prac-

ticed, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.

"And while it might be argued that a person already in prison would be less likely than others to be affected by 'anxiety and concern accompanying public accusation', there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large.

. . .

"Finally, it is self-evident that 'the possibilities that long delay will impair the ability of an accused to defend himself' are markedly increased when the accused is incarcerated . . . Confined in a prison, perhaps far from the place where the offense covered by the outstanding charge allegedly took place, his ability to confer with potential defense witnesses, or even to keep track of their whereabouts, is obviously impaired. And, while 'evidence and witnesses disappear, memories fade, and events lose their perspective,' a man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time." 393 U.S. at 378–380, 89 S.Ct. at 578. These same reasons should apply with equal force when a defendant is incarcerated following convictions on other charges and the Probation Department has instituted proceedings against the defendant for alleged violation of his federal probation, by securing a warrant for his arrest, but has delayed execution of the warrant until he is released from his present sentence.

The other interests: prevention of oppressive pretrial incarceration; and minimizing the anxiety and concern of the accused, can be considered together. These interests must focus, in this case, on the Probation Department's policy of subjecting the defendant to a federal detainer while he was incarcerated for previous convictions.

The debilitating effect of a detainer on a prisoner has long been the subject of legal commentators and the courts:

"The existence of a detainer may have several adverse effects upon the prisoner. He may, for that reason, be held under maximum security or be denied opportunities open to other prisoners, such as transfer to a minimum security area, the privilege of being a trusty, or assignment to a job involving a degree of trust. The detainer makes the prisoner's future uncertain, and thus renders more difficult the formulation of an effective rehabilitation program. Many parole boards will not consider parole for a prisoner who has a detainer lodged against him, although some jurisdictions are now using the parole-to-detainer device, which allows release of the detainee while he serves another sentence or answers other charges. See Newman, Sourcebook on Probation, Parole and Pardons 216–22 (1964); Rubin, The Law of Criminal Correction 483–91 (2d ed. 1973); Schindler, Interjurisdictional Conflict and the Right to a Speedy Trial, 35 U.Cin.L.Rev. 179 (1966); Wexler, Criminal Detainers in a Nutshell, 7 Crim.L.Bull. 753 (1971)." Y. Kamisar, W. LaFave & J. Israel, Modern Criminal Procedure 1070 (4th ed. 1974).

See also Smith v. Hooey, *supra*, at 939, 89 S.Ct. 575; Moore v. Arizona, 414 U.S. 25, 27, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); Strunk v. United States, 412 U.S. 434, 439, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); Trigg v. Tennessee, *supra*, at 954.

 The Probation Department's Damoclean policy of deliberately withholding execution of a previously issued arrest warrant, concomitant with the filing of a detainer on the defendant, is not only oppressive, but also prejudiced

the defendant in preparing any possible defense and nullified any possible discretion for this court to impose a concurrent sentence if it saw fit. Such a policy is violative of the defendant's Sixth Amendment right to a speedy trial and is, therefore, unconstitutional.[9]

The warrant under which the defendant was arrested in this case is quashed and the probation violation charge is dismissed.

So ordered.

9. The new Speedy Trial Act of 1974, Act of January 3, 1975, Pub.L.No.93–619, § 3161, 88 Stat. 2079, seeks to alleviate the predicament of the detainee by providing in part:
§ 3161(j)(1) If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly—
(A) undertake to obtain the presence of the prisoner for trial; or
(B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.
(2) If the person having custody of such prisoner receives a detainer, he shall promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs the person having custody that he does demand trial, such person shall cause notice to that effect to be sent promptly to the attorney for the Government who caused the detainer to be filed.
(3) Upon receipt of such notice, the attorney for the Government shall promptly seek to obtain the presence of the prisoner for trial.
(4) When the person having custody of the prisoner receives from the attorney for the Government a properly supported request for temporary custody of such prisoner for trial, the prisoner shall be made available to that attorney for the Government (subject, in cases of interjurisdictional transfer, to any right of the prisoner to contest the legality of his delivery).