THE PEOPLE OF THE STATE OF NEW YORK EX REL. EDWARD FLORES, Respondent, v STEPHEN DALSHEIM, as Superintendent of Ossining Correctional Facility, et al., Appellants.

Second Department, February 13, 1979

APPEARANCES OF COUNSEL

*Louis J. Lefkowitz, Attorney-General (Samuel A. Hirshowitz* and *Burton Herman* of counsel), for appellants.

*William E. Hellerstein* and *Donald H. Zuckerman (Betti J. Sachs* on the brief), for respondent.

### OPINION OF THE COURT

HOPKINS, J. P.

Should a parolee who violated the conditions of parole be relieved of the imposition of sanctions by virtue of the failure of the State to execute a parole violation warrant? In the answer to this question lies the determination of this appeal.

In their broadest terms the facts are that the petitioner was sentenced to imprisonment upon his conviction and later was released on parole. Thereafter he did not report for an ap-

pointment with his parole officer and was not heard from for nearly three years. In the meantime a parole violation warrant was issued and was not executed until about two and one-half years subsequently.

The petitioner then brought a habeas corpus proceeding and Special Term sustained his petition, holding that the warrant had not been executed by the State with due diligence, and that the delay was "fatal to the continuing jurisdiction of the Board of Parole in this instance."

■■ From this judgment the respondents appeal. There should be a reversal and dismissal of the petition. We hold that the delay was neither inordinate under the circumstances nor a breach of due process, and that the petitioner is subject to sanctions prescribed by the Board of Parole.

I

The petitioner was sentenced on June 14, 1971 to an indeterminate term of imprisonment not to exceed five years. On June 22, 1973 he was released on parole with a maximum expiration date fixed as March 28, 1976. On January 28, 1975 he failed to keep a scheduled appointment with his parole officer in New York City, where he resided,[1] and thereafter he absconded from supervision.

On April 22, 1975 a parole violation warrant was issued; on May 6, 1975 petitioner was declared delinquent as of January 28, 1975. He was thereafter listed as "Wanted" by the State, but it was not until November 23, 1977 that he was actually apprehended and the warrant executed. A preliminary hearing was held on December 1, 1977 on seven charges of violating parole, among which were the petitioner's failure to report to his parole officer and his failure to report his change of residence. The petitioner admitted the charge alleging his failure to report to his parole officer and was bound over for a final hearing, without further inquiry into the other charges.

The petitioner then sued out a writ of habeas corpus, alleging in the petition that he had been a resident of New York City during the period between January, 1975 through November, 1977; that he had married under his own name on February 7, 1975; that he had received public assistance under his own name from the City Department of Social Services in the period between July, 1975 through May, 1976; that he had

---

1. The petitioner's home was located in The Bronx.

participated in a Federally funded program from November, 1975 through May, 1976 under his own name; that he had worked in a publicly funded energy conservation program during June, 1976; that he had filed an income tax return for 1976; that he had maintained public utility accounts between May, 1975 and November, 1977 under his own name; and that during that period he had applied for and received a dog license under his own name. The petitioner claimed that the Board of Parole had not exercised due diligence in executing its warrant and had, therefore, lost jurisdiction over him.

The appellants opposed the petition, stating that the petitioner had failed to report to his parole officer on January 28, 1975; that he had telephoned the parole officer to say that he would report the week of February 4, 1975; and that he did not keep the appointment. The petitioner thereafter did not communicate with the State authorities. The parole officer visited the petitioner's home and found no one there; a neighbor said that the petitioner had not been seen in some time and that she believed that he had moved. The parole officer found that the petitioner was no longer working at his place of employment and his former employer did not know his whereabouts. Efforts to locate the petitioner in Queens and New Jersey were fruitless.

The appellants further asserted that the Parole Board had checked in September, 1976 both the Motor Vehicle Department license records and the records of assistance grants in the office of the Welfare Inspector General, and that no trace of the petitioner was disclosed; in October, 1976 a recheck of the Welfare Inspector General's records was as unproductive. On eight occasions through June, 1977 a parole officer sought the petitioner at different locations in The Bronx, but he was not found. As the result of a complaint against the petitioner on November 21, 1977, he was finally located and apprehended.

Special Term concluded that the evidence sufficiently established that the petitioner had continued to live in New York City, and, using his own name, had obtained steady employment after having received public assistance. Special Term held that the attempts of the State to find the petitioner were no more than "token", and that, coupled with the fact that he had not been involved in legal difficulties, the failure of the State to execute the warrant vitiated the continuing jurisdic-

tion of the Board of Parole. Hence, the petition was granted and the petitioner ordered to be released.

On this appeal the appellants argue that there is no statutory limitation as to the time in which a parole violation warrant must be executed and that, in any event, the Board of Parole had made earnest and diligent efforts to locate the petitioner to no avail. The petitioner argues, on the other hand, that due process requires that a parole violation warrant must be executed with due diligence—a standard which, he contends, the appellants did not observe in his case.

We are consequently obliged to consider the nature of the relationship between the Board of Parole and a parolee, and the duties which are undertaken by the State once a breach of the conditions of parole has occurred and the parolee has been declared delinquent.

II

Section 70.40 (subd 3, par [a]) of the Penal Law provides that: "When a person has violated the terms of his parole and the state board of parole has declared such person to be delinquent, the declaration of delinquency shall interrupt the person's sentence as of the date of the delinquency and such interruption shall continue until the return of the person to an institution under the jurisdiction of the state department of correction."

A parolee cannot abscond during supervision without subjecting himself to the infliction of sanctions *(People ex rel. Patterson v Bockel,* 270 NY 76; *People ex rel. Bickhofer v Lawes,* 255 App Div 873), even though the sanction is imposed after the expiration of the original term of imprisonment *(People ex rel. La Placa v Heacox,* 238 App Div 217). Nonetheless, there are certain strictures derived from the requirements of due process which overlay and restrict the powers of the State over a parolee accused of a violation of the terms of his parole (see, e.g., *People ex rel. Menechino v Warden,* 27 NY2d 376; *People ex rel. Maggio v Casscles,* 28 NY2d 415; *People ex rel. Jones-El v Superintendent of Green Haven Correctional Facility,* 51 AD2d 1049). The direct question posed by this appeal is whether the State is under a duty to execute promptly a warrant based on a breach of parole.

Some 30 odd years ago, a court at nisi prius held that such a duty was imposed on the State *(People ex rel. Grosso v*

*Additon,* 185 Misc 670). There the parolee was declared delinquent on January 8, 1944, but a warrant was not issued until September 8, 1944, and it was not delivered for execution until May 14, 1945. On May 20, 1945 the parolee was arrested —some 16 months after she had been declared delinquent. Finding that the parolee had not been hiding or evading process, the court held (p 671) that the State must be "deemed to have waived the violation and to have lost jurisdiction" on the ground that upon a declaration of delinquency of the parolee it is the duty of the State "to use due diligence in issuing and executing its warrant of arrest." The short opinion of the court, beyond this conclusion, did not consider a conceptual basis for its decision, and it is notable that due process is not mentioned as a constitutional foundation for the requirement of the exercise of due diligence.

Later cases at nisi prius have followed the reasoning of *Grosso* (see *People ex rel. Hensley v New York State Bd. of Parole,* 83 Misc 2d 269; *People v Cooper,* 54 Misc 2d 42; *People v Valle,* 7 Misc 2d 125). There has been little discussion of the problem at the appellate level in this State (cf. *People ex rel. Mullins v Jackson,* 286 App Div 938, mot for lv to app den 309 NY 1031). In other jurisdictions the issue has been treated more extensively by the appellate courts.

Thus, unreasonable delay in issuing and executing a parole violation warrant has been said to vitiate the warrant in certain instances, but the courts have not agreed on the rationale for that conclusion. Some courts have determined that the parolee's liberty is protected by the fundamental fairness doctrine embedded in the due process clause (see, e.g., *Greene v Michigan Dept. of Corrections,* 315 F2d 546; *Shelton v United States Bd. of Parole,* 388 F2d 567; *Castillo v United States,* 391 F2d 710; *McCowan v Nelson,* 436 F2d 758; *Simon v Moseley,* 452 F2d 306; *United States v Strada,* 503 F2d 1081; *Gaddy v Michael,* 519 F2d 669, cert den 429 US 998). Others have said that a warrant becomes stale if not executed within a reasonable time *(United States v Gernie,* 228 F Supp 329, 337-339; *United States ex rel. Vance v Kenton,* 252 F Supp 344, 345). Another, like *Grosso,* placed its decision on the theory of waiver by the State *(Matter of Bice,* 42 Ala App 547).[2]

---

2. One case found a violation of the requirement of the Sixth Amendment for a speedy trial in the Government's deferment of the execution of a parole warrant *(United States v Louzon,* 392 F Supp 1220). In view of the discussion of a prompt

■ We think that the latter two rationales—staleness and waiver—do not provide satisfactory grounds for holding the warrant unenforceable. Staleness denotes little more than age; age in itself should not render a warrant void, for inability to execute the warrant may be due to the flight of the person charged. A warrant should be exercisable whenever the fugitive returns. The doctrine of waiver presupposes, first, a knowing relinquishment of rights, and second, the authority of the parole officer who failed to pursue the violation or the parolee to bind the State to the waiver. We cannot imply from delay alone an intention to surrender the State's power over the parolee. Nor should we ignore the overwhelming burden which would be cast on the understaffed personnel of the Board of Parole, both to supervise and hunt parolees, under pain of a loss of control over the delinquents if one of the parole officers were delayed in the discharge of his responsibilities.

We revert therefore to the question of whether due process demands reasonable diligence in the execution of a parole violation warrant.

### III

■ Due process in its expansive dimension requires that a person in jeopardy of serious loss be given notice of the case against him and the opportunity to meet it, according to the capacities and circumstances of those concerned (*Mathews v Eldridge,* 424 US 319, 349). Here the petitioner had been convicted of a crime, imprisoned and then released under a duty to observe certain conditions of parole. In the first instance, the onus rested on the petitioner to perform the provisions of his obligation; not until the petitioner violated his obligations was any duty of the State to act triggered. In a true sense, then, the correlative duties are dependent, and we must measure the performance of both in the light of the capacities and circumstances of both sides to the arrangement.

An absconding parolee is not in the same status as an escaped prisoner (cf. *People ex rel. Patterson v Bockel,* 270 NY 76); a parolee has rights, under due process, to a proper notice of violation and a prompt hearing (*Morrissey v Brewer,* 408

hearing requirement under due process, *infra,* this basis for decision is not analyzed at this point.

US 471; *Gagnon v Scarpelli,* 411 US 778; *People ex rel. Calloway v Skinner,* 33 NY2d 23), and is shielded against unreasonable searches *(People v Huntley,* 43 NY2d 175; *People v Jackson,* 46 NY2d 171). No longer is parole arbitrarily categorized as a privilege without the procedural protection of due process *(Morrissey v Brewer, supra,* pp 480-481). Nevertheless, we do not consider that a parolee is entitled to all of the advantages of a speedy trial tendered by the Sixth Amendment (see, e.g., *United States v Marion,* 404 US 307; *People v Taranovich,* 37 NY2d 442; *People v Singer,* 44 NY2d 241). The Sixth Amendment was directed toward the predicament of one charged with a crime and yet unable to free himself from the accusation because of delay in the trial; prejudice in an extreme case of delay without justification may not be required to be shown by the defendant in such circumstances *(People v Singer, supra,* p 254).[3] But these circumstances do not exist in the case of a parole violator; he has been convicted of a crime and now stands charged with a failure to obey the conditions under which he was released from incarceration (cf. *Morrissey v Brewer, supra,* p 480). "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence" *(Morrissey v Brewer, supra,* p 477).

Nevertheless, the parolee should be granted the benefit of a prompt disposition of charges against him in the interests of fundamental fairness (cf. *Monks v New Jersey State Parole Bd.,* 58 NJ 238, 246; *White v Parole Bd. of State of N. J.,* 17 NJ Super 580, 586). Damocles' sword should not menace a parolee who is guilty of an infraction of his parole, since the suspense runs counter to the objectives of rehabilitation and fair supervision which parole is intended to accomplish *(Morrissey v Brewer, supra,* p 484). Whether the disposition was prompt must perforce be governed by many factors—the length of the delay, the reason for the delay and whether the parolee himself contributed to the delay. It is in this context that the circumstances here must be examined.

We think that a parolee who fails to report and absconds from supervision cannot assert an immunity from apprehension due to delay alone by the State in finding him. "Obvi-

---

3. Delayed parole proceedings have been said not to be subject to the Sixth Amendment prescription of a speedy trial *(Small v Britton,* 500 F2d 299; *Cook v United States Attorney General,* 488 F2d 667).

ously, a violator who has succeeded in evading the authorities is in no position to complain of a delay" *(Shelton v United States Bd. of Parole,* 388 F2d 567, 574, *supra;* see, also, *Parham v Warden,* 172 Conn 126; cf. *Commonwealth v Clark,* 225 Pa Sup Ct 171; *Decker v State,* 209 NW2d 879 [ND]). A parolee who continually fails to report or notify the State that he has changed residence is unlike a parolee who, though faithfully reporting to the authorities, is declared delinquent, for example, because of his consorting with known criminals or use of alcoholic beverages; the parolee under these charges may well be disadvantaged by delay, since his defense becomes the more difficult to establish as time passes. The parolee who continually fails to report is under no such handicap.

## IV

Hence, we conclude that the State did not fail in any aspect of its responsibility here. The petitioner could have made his residence known to the Board of Parole at any time; to substitute for the duty of the petitioner to comply with his parole by communicating with the board a duty on the board to locate him distorts the relation between them. The record, as we read it, shows that the petitioner did not depart from New York City. But that does not mean that he could be easily located within the city, once he had left the residence which he registered with the board. Names may be similar and neighbors and friends may be reluctant to supply information. On the other hand, a simple telephone call by the petitioner to the parole officer would have met the parolee's obligation. Accordingly, we see no deprivation of due process in the delay of the execution of the warrant under the facts of this case.

We have considered the other contentions of the petitioner and hold them to be meritless. The claim that he has led an exemplary life during the time of his release on parole will undoubtedly be given due weight by the Board of Parole.

There should be a reversal and dismissal of the petition.

DAMIANI, RABIN and MARGETT, JJ., concur.

Appeal from a judgment of the Supreme Court, Westchester County, entered April 26, 1978, dismissed as academic, without costs or disbursements. The judgment was superseded by the order granting reconsideration.

Order of the same court dated May 10, 1978, reversed

insofar as reviewed, on the law, without costs or disbursements; petition dismissed, and petitioner is directed to surrender himself to the Superintendent of the Ossining Correctional Facility.