UNITED STATES of America,
Plaintiff-Appellee,

v.

Herman FRANKS, Defendant-Appellant
(two cases).

UNITED STATES of America,
Plaintiff-Appellee,

v.

Max BRITTON, Defendant-Appellant
(two cases).

UNITED STATES of America,
Plaintiff-Appellee,

v.

Boyce MITCHELL,
Defendant-Appellant.

Nos. 73–2157 to 73–2160 and 74–1138.

United States Court of Appeals,
Sixth Circuit.

Feb. 12, 1975.
Certiorari Denied June 23, 1975.
See 95 S.Ct. 2654, 2656, 2667.

Robert W. Andrews, Erich W. Merrill, Malone & Merrill, Albert Harvey, Boyce Mitchell, Howard T. Paul, Thomas A. Buford, Memphis, Tenn., for defendants-appellants.

Thomas F. Turley, U. S. Atty., Larry E. Parrish, Memphis, Tenn., for plaintiff-appellee.

Before PECK, LIVELY and ENGEL, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Defendants-appellants Franks and Britton were convicted, after a sixteen-day (16-day) jury trial in district court, of causing others on or about June 2, 1971, to commit physical violence to Jett Hair Care Center ("Jett Hair") and Tri-

State Beauty Supply ("Tri-State"), two Memphis, Tennessee, businesses whose operation affected commerce, in furtherance of a plan and purpose to obstruct commerce in violation of the Hobbs Act, 18 U.S.C. § 1951(a) (1970),[1] and of 18 U.S.C. § 2 (1970).[2] Franks and Britton also were convicted of aiding and abetting the malicious damaging and attempt to destroy on or about June 2, 1971, by means of an explosive, Jett Hair and Tri-State in violation of 18 U.S.C. § 844(i) (1970)[3] and of 18 U.S.C. § 2 (1970). Defendant-appellant Mitchell, tried together with Franks and Britton, was convicted of knowingly causing on or about June 1, 1971, certain explosives (blasting caps) to be transported in interstate commerce without being licensed to do so in violation of 18 U.S.C. § 842(a)(3)(A) (1970).[4]

Together, appellants have asserted no fewer than twenty-five claims on appeal. We have found, however, no reversible error.

Franks, Britton and Mitchell claim that they were misjoined in the indictments and that, in any event, the district judge should have granted their pre-trial motions for separate trials. Franks and Britton add that the district court erred in consolidating the purported Hobbs Act violation, charged in a separate indictment, with the indictment charging them and Mitchell with explosives violations. Counts 1 and 2 of Indictment 72– 48 charged Franks and Britton with aiding and abetting, on or about June 2, 1971, the malicious damaging and attempt to destroy by explosives Jett Hair and Tri-State. Count 3 of Indictment 72–48 charged Mitchell with causing on or about June 1, 1971, the interstate transportation of blasting caps from Mississippi to Tennessee. Indictment 72–49 charged Franks and Britton with, on or about June 2, 1971, causing others to commit physical violence to Jett Hair and Tri-State in violation of the Hobbs Act.

Because more than one defendant is involved, Federal Rule of Criminal Procedure 8(b) governs the permissibility of joinder. United States v. Bova, 493 F.2d 33, 35 (5th Cir. 1974); Cupo v. United States, 123 U.S.App.D.C. 324, 359 F.2d 990, 992 (1966), cert. denied, 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967). Rule 8(b) permits the joining in an indictment of defendants "alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Of course, Rule 8(b) can, and should, be "broadly construed in favor of initial joinder," because of the protection Rule 14 affords against unnecessarily prejudicial joinder. United States v. Isaacs, 493 F.2d 1124, 1158 (7th Cir.), cert. denied, 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974); United States v. Friedman, 445 F.2d 1076, 1082–1083 (9th

1. "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both."

2. "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 "(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

3. "Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both . . . ."

4. "It shall be unlawful for any person . . . other than a licensee or permittee knowingly . . . to transport, ship, cause to be transported, or receive·in interstate or foreign commerce any explosive materials, except that a person who lawfully purchases explosive materials from a licensee in a State contiguous to the State in which the purchaser resides may ship, transport, or cause to be transported such explosive materials to the State in which he resides and may receive such explosive materials in the State in which he resides, if such transportation, shipment, or receipt is permitted by the law of the State in which he resides . . . ."

Cir.), cert. denied sub nom., Jacobs v. United States, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971); Haggard v. United States, 369 F.2d 968, 973 (8th Cir. 1966), cert. denied, 386 U.S. 1023, 87 S.Ct. 1379, 18 L.Ed.2d 461 (1967). As other courts have recognized,

> "In determining whether offenses are based on 'acts or transactions connected together,' the predominant consideration is whether joinder would serve the goals of trial economy and convenience; the primary purpose of this kind of joinder is to insure that a given transaction need only be proved once." Baker v. United States, 131 U.S.App.D.C. . 7, 401 F.2d 958, 971 (1968).

Accord, Cataneo v. United States, 167 F.2d 820, 823 (4th Cir. 1948).

Had Indictment 72–48 explicitly alleged that the blasting caps which Mitchell allegedly caused to be transported were intended to be used, or even used, in the Memphis explosions, it could hardly be urged that they were not the "same transactions." See United States v. Morgan, 394 F.2d 973 (6th Cir.), cert. denied, 393 U.S. 942, 89 S.Ct. 310, 21 L.Ed.2d 279 (1968) (joinder of defendant charged with receiving and concealing stolen government bonds with defendants charged with "some aspects of the theft, transportation or sale of the bonds"); United States v. Bryant, 490 F.2d 1372 (5th Cir.), cert. denied sub nom., Impson v. United States, 419 U.S. 832, 95 S.Ct. 57, 42 L.Ed.2d 58 (1974) (joinder of defendant charged with transporting and receiving stolen automobile with defendant charged with receiving such automobile); Kitchell v. United States, 354 F.2d 715 (1st Cir.), cert. denied, 384 U.S. 1011, 86 S.Ct. 1970, 16 L.Ed.2d 1032 (1966) (joinder of defendants charged with transporting stolen cigarettes with defendant charged with receipt of such cigarettes); Caringella v. United States, 78 F.2d 563 (7th Cir. 1935) (joinder of defendants charged with theft with defendant charged with receiving and possessing stolen goods). Though explicitly alleging the connection is preferred practice, Orfield, Joinder in Federal Criminal Procedure, 26 F.R.D. 23, 72–73 (1960), the lack of such an allegation is immaterial where, as here, a connection sufficient for proper joinder is implicit. See United States v. Bally Mfg. Co., 345 F.Supp. 410, 430 (E.D.La. 1972) (finding "participat[ion] in a series of acts" from "a fair reading" of the indictment); United States v. Florio, 315 F.Supp. 795, 797 (E.D.N.Y.1970) ("participation" found "in light of" allegations); United States v. Welsh, 15 F.R.D. 189, 190 (D.D.C.1954) (indictment "deemed" or "construed" as alleging "same series of acts or transactions"). See also United States v. Lugo, 269 F.Supp. 757 (E.D. Wis.1967) (indictment "not susceptible to a reasonable construction" of connected transaction). The alleged interstate transportation predated the explosions by one day, and the alleged transportation was to Tennessee where the explosions occurred. Even if the absence of such explicit allegation invalidated the joinder, the later development of a "connection" sufficient for Rule 8(b) would permit the district court to consolidate separate indictments, and presumably separated counts, for trial. See King v. United States, 355 F.2d 700, 703 (1st Cir. 1966); Griffin v. United States, 272 F.2d 801 (5th Cir. 1959), modified, 273 F.2d 958 (5th Cir. 1960); United States v. Florio, 315 F.Supp. 795, 797 (E.D.N.Y. 1970); United States v. Havrick, 153 F.Supp. 696, 698 (D.N.D.1957).

If Counts 1, 2 and 3 were properly joined in Indictment 72–48, then the charges contained in Indictment 72–49, stemming from the same explosions as the charges contained in Counts 1 and 2 of Indictment 72–48, were properly tried together with the charges contained in Indictment 72–48 because they, being virtually identical to the charges of Counts 1 and 2 of Indictment 72–48, "could have been joined in a single indictment" with the charges of Indictment 72–48. Fed.R.Crim.P. 13.

Even if Franks, Britton and Mitchell were joined contrary to Rule 8(b), such misjoinder most likely would be harmless

**30**

error because evidence of the explosions would be admissible against Mitchell in establishing his knowledge that the transportation of the blasting caps would be interstate and because evidence of the interstate transportation of the blasting caps would be admissible against Franks and Britton in establishing the plan or scheme of the bombings. United States v. Weiss, 491 F.2d 460, 466–467 (2d Cir.), cert. denied, —— U.S. ——, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974); United States v. Roselli, 432 F.2d 879, 901 (9th Cir. 1970), cert. denied, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); Baker v. United States, 401 F.2d 958, 972–973 (D.C.Cir. 1968).

■ Even assuming that the charges of the indictments were properly joined and that the indictments otherwise would be properly consolidated for trial, Rule 14 still authorizes a separate trial to avoid the undue prejudice of a joint trial. A district court's denial of a severance, however, is reversible only for an abuse of discretion. United States v. Demetre, 461 F.2d 971 (6th Cir. 1972); United States v. Martinez, 428 F.2d 86 (6th Cir.), cert. denied, 400 U.S. 881, 91 S.Ct. 125, 27 L.Ed.2d 119 (1970), 402 U.S. 951 (1971); United States v. Morgan, 394 F.2d 973 (6th Cir.), cert. denied, 393 U.S. 942, 89 S.Ct. 310 (1968).

■ Franks and Britton primarily claim undue prejudice in that the government was allowed to attempt to prove that Mitchell conspired to kill a government witness. We find, however, no prejudice in that a jury could be expected to segregate such evidence and apply it only to Mitchell. United States v. Bell, 457 F.2d 1231, 1240 (5th Cir. 1972). See United States v. Gimelstob, 475 F.2d 157, 160 (3rd Cir.), cert. denied, 414 U.S. 828, 94 S.Ct. 49, 38 L.Ed.2d 62 (1973); In re Gottesman, 332 F.2d 975 (2d Cir. 1964).

■ Mitchell's claim of prejudice in a joint trial is somewhat more substantial.

He claims that because the statute he was convicted of is rather simple, requiring only that he (1) knowingly, (2) transported or caused to be transported explosive devices in interstate commerce, (3) without being licensed to do so, evidence that the blasting caps were used in illegal bombings and evidence of labor violence in Memphis was irrelevant to his charge and, hence, unnecessarily prejudicial. Though Mitchell's claim presents serious issues, we decline to hold that the district court abused its discretion in refusing to grant Mitchell a separate trial because much of the evidence concerning the bombings and labor violence would be admissible, in any event, in a separate trial of Mitchell as tending to prove scienter. See Robinson v. United States, 148 U.S.App.D.C. 58, 459 F.2d 847, 854–860 (1972); Blunt v. United States, 131 U.S.App.D.C. 306, 404 F.2d 1283, 1288 (1968), cert. denied, 394 U.S. 909, 89 S.Ct. 1021, 21 L.Ed.2d 221 (1969). See generally Manning v. Rose, 507 F.2d 889 (6th Cir. 1974). That Franks and Britton were more culpable than Mitchell, of course, does not require that Mitchell be tried separately. See United States v. Demetre, 461 F.2d 971, 974 (6th Cir. 1972); United States v. Vida, 370 F.2d 759, 765 (6th Cir. 1966), cert. denied, 387 U.S. 910, 87 S.Ct. 1695, 18 L.Ed.2d 630 (1967).

■ Franks, Britton and Mitchell also argue that the district judge erred in admitting certain tape recordings of their conversations with certain government informants because the judicially unauthorized taping of such face-to-face and telephonic conversations violated either the Fourth Amendment or 18 U.S.C. § 2510 et seq. (1970).[5] The informants' consent to having such conversations recorded would shield those recordings from constitutional, United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), Stephen v. United States, 496 F.2d 527 (6th Cir. 1974), United States v. Black, 472 F.2d 130 (6th

**5.** "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court . . . if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515 (1970).

Cir. 1972), cert. denied, 411 U.S. 969, 93 S.Ct. 2161, 36 L.Ed.2d 691 (1973), United States v. Martinez, 428 F.2d 86, 88 (6th Cir.), cert. denied, 400 U.S. 881, 91 S.Ct. 125, 27 L.Ed.2d 119 (1970), 402 U.S. 951, 91 S.Ct. 1630, 29 L.Ed.2d 122 (1971), and statutory, 18 U.S.C. § 2511(c) (1970), United States v. Johnson, 484 F.2d 165, 168 (9th Cir.), cert. denied, 414 U.S. 1112, 94 S.Ct. 842, 38 L.Ed.2d 739 (1973), United States v. Puchi, 441 F.2d 697 (9th Cir.), cert. denied, 404 U.S. 853, 92 S.Ct. 92, 30 L.Ed.2d 92 (1971), Bakes v. United States, 350 F.Supp. 547 (N.D.Ill.1972), aff'd, 478 F.2d 1405 (7th Cir. 1973), United States v. Riccobene, 320 F.Supp. 196, 203 (E.D.Pa.1970), aff'd, 451 F.2d 586 (3rd Cir. 1971), attack. Mitchell, however, attacks the validity of informant Davis' consent, arguing that:

> "Davis had a long criminal record and had numerous charges pending against him. The Government placed him under full protective custody, gave him an extremely nice apartment for he [sic] and his girlfriend, provided him with a living allowance, secured for his use a new Cadillac automobile and gave him other special considerations. Additionally, Davis was never tried for or sentenced for any of the crimes of which he was charged prior to his agreement to cooperate with the government." Mitchell's Brief at 31.

We find, however, sufficient consent to shield the government recordings. See United States v. Dowdy, 479 F.2d 213, 229 (4th Cir.), cert. denied, 414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 56 (1973) (pressure of potential indictment and promise of immunity insufficient to vitiate consent); United States v. Silva, 449 F.2d 145 (1st Cir. 1971), cert. denied, 405 U.S. 918, 92 S.Ct. 942, 30 L.Ed.2d 787 (1972) (promise of suspended sentence in reference to pending indictment insufficient); Black v. United States, 341 F.2d 583 (9th Cir.), cert. denied, 382 U.S. 854, 86 S.Ct. 105, 15 L.Ed.2d 92 (1965) ("special employee" status of and promise to arrestee

to make his co-operation "known" to prosecutor's office insufficient).

Franks and Britton claim their Hobbs Act convictions should be reversed because the government neither alleged nor proved extortion. The government counters that it need neither allege nor prove extortion if it alleges and proves physical violence affecting commerce. We can accept in toto neither interpretation of the Hobbs Act. The Hobbs Act, by the plainest of language, proscribes "physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section." The statute makes clear that a plan or purpose "in violation of this section" includes a plan or purpose of "obstruct[ing], delay[ing], or affect[ing], commerce . . . by robbery or extortion . . . ." Thus, if one commits physical violence affecting commerce in furtherance of a plan of obstructing, delaying or affecting commerce "by robbery or extortion," he has violated the Hobbs Act. We reject the interpretation urged by Franks and Britton, an interpretation which would require extortion. We construe the statute as reaching physical violence designed to culminate in extortion, even if the scheme aborts prior to extortion. Likewise, we cannot accept the government's view that the statute proscribes all physical violence obstructing, delaying, or affecting commerce. The statute's language and legislative history[6] require that the violence be in furtherance of a plan or purpose to obstruct, delay, or affect commerce by extortion or robbery.

In applying the adopted interpretation, we find sufficient evidence underlying the jury finding that Franks and Britton violated the statute. Particularly in light of the Hobbs Act's legislative history,[7] violence designed to coerce a businessman into changing his establishments from non-union to union is cer-

---

6. See 91 Cong.Rec. 11899–11922 (1945).

7. The Hobbs Act was designed to prevent labor organizations from coercing farmers to

"hire" union drivers in order to get their produce to city markets. See 91 Cong.Rec. 11904, 11905, 11917 (1945).

tainly violence designed to extort.[8] Moreover, the indictment was hardly prejudicial or insufficient in that it alleged physical violence "in violation of Title 18, United States Code, § 844(i)," which, from a plain reading of the statute, would mean physical violence in furtherance of a plan or purpose of obstructing, delaying, or affecting commerce by robbery or extortion.

██ Britton complains that the district judge erred in refusing eighteen requested jury instructions and in losing those requests. Fortunately, Britton and the government were able to reconstruct sixteen of the requests.[9] Of those sixteen, twelve were substantially covered, implicitly or explicitly, in the instructions given the jury; and four were inapplicable to the evidence. Although we can neither comprehend nor condone the loss of the requested instructions, it does not appear that such loss prejudiced Britton's substantial rights. The district judge's instructions fairly posed the jury issues, only two requested instructions remain missing, and Britton has made no claim that those missing requests differ substantially from the other sixteen which the district judge properly denied. We are unwilling to reverse in such circumstances. Compare United States v. Perry, 153 U.S.App.D.C. 89, 471 F.2d 1057 (1972) (unexplained loss of one witness' grand jury testimony needed for Jencks Act compliance).

██ Mitchell and Britton claim that the court order compelling them to give voice exemplars violated their constitutional right against unreasonable searches and seizures and their constitutional privilege against self-incrimination. United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), established that compelling voiceprints even of the same words used in the crime does not violate the constitutional privilege against self-incrimination. Accord, United States v. Rogers, 475 F.2d 821, 825–826 (7th Cir. 1973). Moreover, compelling a voiceprint is neither a "search" nor a "seizure." Dionisio, 410 U.S. at 14–15, 93 S.Ct. 764. We reject Mitchell's attempt to limit Dionisio to the grand jury context in that, so long as the underlying seizure of the person is proper, requiring that person to submit voice exemplars violates no constitutional right. See United States v. Rogers, 475 F.2d 821 (7th Cir. 1973) (court-ordered submission); United States v. Sanders, 477 F.2d 112 (5th Cir.), cert. denied, 414 U.S. 870, 94 S.Ct. 88, 38 L.Ed.2d 88 (1973) (legally in custody on another matter). We also reject Mitchell's claim that the order requiring the voice exemplars, almost seven months subsequent to his arrest, came too late.

---

8. The district judge properly charged the jury that extortion means "to obtain the property of another, with consent of such other person, by inducing such consent by wrongful use of force, violence or fear." Trial Transcript at 3668. By coercing a businessman into changing his establishments from non-union to union, or risk being bombed, one deprives the businessman of his "property" interest of an economic advantage, of using non-union labor, or of operating his business.

9. "Counsel for the Defendant Max Britton, having informed the Court that the eighteen (18) Requests for Jury Instructions submitted on behalf of Defendant Max Britton, and denied by the Court as set out in the transcript at page 3687 and diligent search having been made in the file transmitted to the Sixth Circuit Court of Appeals, in the file of the United States District Court Clerk for the Western District of Tennessee, in the records and papers of the Court Reporter, and the file of the district judge, said Requests cannot be found, it is, on motion of the Defendant Max Britton, through counsel, and by consent of the United States District Attorney.

"It is ordered, that the attached copies of sixteen (16) of the Requests for Jury Instruction submitted by Defendant Max Britton are authentic copies of those denied by the Court and properly excepted to by said Defendant. The Clerk is ordered to make said copies a part of the record in this cause and transmit them to the United States Court of Appeals for the Sixth Circuit at Cincinnati to be included in the record of the cause.

"Because of the inability to reconstruct or furnish copies of the two (2) additional special Requests For Jury Instructions or to find the originals thereof, this order does not apply to those two (2) Requests."

See United States v. Lincoln, 494 F.2d 833 (9th Cir. 1974) (compulsion of handwriting exemplar less than one week prior to scheduled beginning of trial).

 Britton and Mitchell also complain that voiceprint ("spectographic") analysis is too inaccurate to be admitted into evidence. Though the only circuit ruling on the admissibility of voiceprints has found them inadmissible, United States v. Addison, 498 F.2d 741 (D.C.Cir. 1974), aff'g 337 F.Supp. 641 (D.D.C.1972), other courts are somewhat divided over, but the trend favors, the admissibility of voiceprints.[10] Although we, of course, are aware of the differences of judicial and scientific opinion concerning the use of voiceprints, we also are mindful of "a considerable area of discretion on the part of the trial judge in admitting or refusing to admit" evidence based on scientific processes. United States v. Stifel, 433 F.2d 431, 437 (6th Cir. 1970), cert. denied, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 531 (1971).

"[N]either newness nor lack of absolute certainty in a test suffices to render it inadmissible in court. Every

useful new development must have its first day in court. And court records are full of the conflicting opinions of doctors, engineers and accountants . . . ." 433 F.2d at 438.

Moreover, *Stifel* recognized that those opposing the admissibility of scientific tests can direct their criticisms toward the weight of such evidence.[11] Applying *Stifel*, which admitted expert testimony concerning neutron activation analysis, we find that the district court was within its discretion in admitting voiceprint analysis. The district court qualified the expert voiceprint witness only after an extensive 25-page inquiry into his qualifications and the reliability of the scientific process; defense counsel were permitted to cross-examine the witness concerning his purported role as an advocate of the process and some other courts' refusals to admit voiceprint evidence. Moreover, neither Britton nor Mitchell produced a witness rebutting the government's claim that voiceprint analysis is sufficiently accurate to be admissible.[12]

 We also reject Britton's claim that the expert improperly testified to

10. Trial courts in "approximately 20 jurisdictions throughout the United States" have admitted voiceprints. People v. Chapter, 13 Crim.L.Rep. 2479 (Marin Cty. Cal.Super.Ct. July 23, 1973). Reported appellate decisions in Florida have admitted voiceprints. Alea v. State, 265 So.2d 96 (3rd Fla.Ct.App.1972); Worley v. State, 263 So.2d 613 (4th Fla.Ct. App.1972). So has the United States Court of Military Appeals. United States v. Wright, 17 U.S.M.C.A. 183, 37 C.M.R. 447 (1967). New Jersey, which earlier held such analysis inadmissible, State v. Cary, 49 N.J. 343, 230 A.2d 384 (1967), has indicated the growing acceptance of such analysis. State v. Andretta, 61 N.J. 544, 296 A.2d 644 (1972). See also United States v. Askins, 351 F.Supp. 408, 416–418 (D.Md.1972). California's courts of appeals are divided even among themselves. Compare Hodo v. Superior Court, 30 Cal. App.3rd 778, 106 Cal.Rptr. 547 (4th Ct.App. 1973), with People v. Law, 40 Cal.App.3rd 69, 114 Cal.Rptr. 708 (5th Ct.App.1974). In judicial proceedings other than criminal trials, Minnesota has admitted voiceprints to establish probable cause, State ex rel. Trimble v. Hedman, 291 Minn. 442, 192 N.W.2d 432 (1971), and a federal district court has admitted them at a parole revocation hearing. United States v. Sample, 378 F.Supp. 43 (E.D.

Pa.1974). See generally Annot., Admissibility and Weight of Voiceprint or Sound Spectograph Evidence, 49 A.L.R.3rd 915 (1973).

11. Of course, appellants aired their criticism of voiceprints in cross-examining the voiceprint expert. The district judge, moreover, specifically instructed the jury that Mitchell's refusal to submit voice exemplars may stem from a "lack of trust in the validity of the voice exemplar test." Trial Transcript at 3683.

12. United States v. Sample, 378 F.Supp. 43, 53 (E.D.Pa.1974); United States v. Brown, 13 Crim.L.Rep. 2203, 2204 (D.C.Super.Ct. May 1, 1973); cf. People v. Chapter, 13 Crim.L.Rep. 2479 (Marin Cty. Cal.Super.Ct. July 23, 1973). Though United States v. Stifel, 433 F.2d 431, 438, 441 (6th Cir. 1970), cert. denied, 401 U.S. 994, 91 S.Ct. 1232 (1971), applied the Frye v. United States, 54 App.D.C. 46, 293 F. 1013 (1923), standard governing admissibility of scientific evidence as whether the scientific process has gained "general acceptance in the particular field in which it belongs," we deem general acceptance as being nearly synonymous with reliability. If a scientific process is reliable, or sufficiently accurate, courts may also deem it "generally accepted." Accord, United States v. Brown, 13 Crim.L.Rep. 2203, 2204 (D.C.Super.Ct. May 1, 1973).

what he heard on the tapes as well as to identifying voices. After all, the district judge cautioned that "it [was] for the jury to weigh the expert's testimony [as to what was said]." Trial Transcript at 109. Moreover, the jury listened to the tapes. Even transcripts of taped conversations have been admitted. See Fountain v. United States, 384 F.2d 624 (5th Cir. 1967), cert. denied sub nom., Marshall v. United States, 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968); see also United States v. Desist, 384 F.2d 889, 899 (2d Cir. 1967), aff'd, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969).

 Franks claims that the district judge erred in admitting into evidence certain admittedly falsified documents implicating him in the bombings in question and in another bombing. We find, however, no prejudicial error in that the trial judge twice cautioned the jury that such documents were not being offered for their truth and were written to protect the government's informant.[13] Of course, the knowing use of false evidence if uncorrected violates due process. Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 293, 3 L.Ed.2d 1217 (1959). But juries are expected to follow their instructions. Spencer v. Texas, 385 U.S. 554, 562, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). Even where false evidence has been "corrected" by subsequent defense cross-examination, rather than by the government *ab initio*, courts have found no prejudicial error. Link v. United

States, 352 F.2d 207, 210–211 (8th Cir. 1965), cert. denied, 383 U.S. 915, 86 S.Ct. 906, 15 L.Ed.2d 669 (1966); see United States v. Marchese, 341 F.2d 782, 795–801 (9th Cir.), cert. denied, 382 U.S. 817, 86 S.Ct. 41, 15 L.Ed.2d 64 (1965). See generally Manning v. Rose, 507 F.2d 889, 891 fn. 2 (6th Cir. 1974).

 Mitchell claims that the district judge erred in admitting into evidence a photograph comparing, apparently side-by-side, three different blasting caps where the photograph "attempted to take the decision away from the jury of determining whether or not the caps had a similarity" and where "[t]he caps were present for jury examination." Of course, the admission of photographs lies within the district judge's discretion. United States v. Burton, 485 F.2d 715, 717–718 (8th Cir. 1973); United States v. White, 454 F.2d 435, 438 (7th Cir. 1971), cert. denied, 406 U.S. 962, 92 S.Ct. 2070, 32 L.Ed.2d 350 (1972). We find no abuse of discretion particularly in light of the non-inflammatory nature of the photographs and in light of established case law that photographs may supplement other evidence. See St. Lukes Hosp. Ass'n v. Long, 125 Colo. 25, 240 P.2d 917, 922 (1952); Morrissey v. Connecticut Valley St. Ry., 233 Mass. 554, 124 N.E. 435, 437 (1919).

 Mitchell also claims that the district judge erred in instructing the mens rea requirement of a section 842(a)(3)(A) violation.[14] Mitchell argues that the

---

**13.** "[THE COURT: I]nsofar as the contents of the memoranda is concerned, it is my understanding, as I said, that the Government does not contend that that's factually correct, and it is not being offered for the truth of the contents of the memoranda, but simply as setting up a ruse or protection for the informer, Davis. Now, you jurors understand that, do you not?

"(Jury indicates affirmatively.)

"THE COURT: You won't take anything in those memoranda as being an assertion as being true as evidence in the case? I am sure you won't.

"Now, is there anything else that we need to say to protect everybody here?

"MR. PAUL [Britton's counsel]: I think that's fair enough." Trial Transcript at 478–479.

When the documents were referred to later, the district judge again cautioned the jury:

" . . . I don't believe it is necessary, but I will remind you again that the contents of these documents, that is the information in there is not being offered by the Government as being truthful. It is simply the Government, as you remember, according to the Government, used these documents through Mr. Davis to convince other people that some things were going on that really weren't. You recall that, I am sure." Trial Transcript at 2504. By twice, and particularly by promptly, admonishing the jury, the district judge substantially reduced the risk of prejudice. See Manning v. Rose, 507 F.2d 889, 891 fn. 2 (6th Cir. 1974).

**14.** "[I]n order to find the defendant Mitchell guilty under Count III of the indictment, you

jury must find that the transporter knew that the interstate transportation violated federal law. By the statute's plain language, however, the violator must "knowingly" transport explosives in interstate commerce; there is no requirement that the violator know that such transportation violates federal statute. Had Congress intended such a requirement, it could easily have imposed one. The judicial imposition of such a requirement would be particularly inappropriate in light of the almost universal lack of such requirement, LaFave & Scott, Criminal Law § 47 (1972), and of Congress' remedial purpose in enacting section 842. See United States v. Dawson, 467 F.2d 668, 671–673 (8th Cir. 1972), cert. denied, 410 U.S. 956, 93 S.Ct. 1427, 35 L.Ed.2d 689 (1973); 116 Cong. Rec. 35298–35361 (1970).

■ Likewise we reject Mitchell's assertion that there was insufficient evidence that he "caused" the interstate transportation of explosive devices. "Cause," of course, has a broad meaning. See United States v. Hill, 468 F.2d 899 (5th Cir. 1972); United States v. Boone, 460 F.2d 1285 (4th Cir. 1972). As long as one puts in motion forces resulting in the interstate transportation of explosive devices, he has "caused" their interstate transportation; surely, one "causes" such interstate transportation by giving such devices to one he knows will cross state lines.[15]

■ We also reject Mitchell's claim that the district court lacked jurisdiction because "every act necessary on the part of the defendant, Mitchell, in order to be convicted" occurred outside the district. Federal statute specifically provides that

"[a]ny offense involving the . . transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided . . . ., may be inquired of and prosecuted in any district from, through, or into which such commerce . . . moves." 18 U.S.C. § 3237 (1970).

Clearly the district court had jurisdiction over the charge that Mitchell unlawfully caused the blasting caps to be transported from Mississippi to Memphis, Tennessee, Lord v. United States, 412 F.2d 499 (4th Cir. 1969); Oliver v. United States, 299 F.2d 352 (8th Cir.), cert. denied, 370 U.S. 960, 82 S.Ct. 1615, 8 L.Ed.2d 826 (1962); United States v. Malfi, 264 F.2d 147 (3rd Cir.), cert. denied, 361 U.S. 817, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959).

■ Mitchell claims error in admitting evidence that he was held in contempt for refusing to give a court-ordered exemplar and in instructing the jury that it could infer consciousness of guilt from such refusal.[16] There was no

---

must find that on or about June 1, 1971, the defendant Mitchell knowingly caused to be transported from the Northern District of Mississippi into the Western District of Tennessee, Western Division, explosive materials, to-wit, non-electric blasting caps . . . ..

"Now, members of the jury, I charge you that it is not necessary that it be shown that the defendant Mitchell had knowledge at that time that it was a violation of the Federal Criminal Law to cause to be transported blasting caps in interstate commerce. It is necessary, however, that it be shown that at that time the defendant Mitchell knowingly caused such caps to be transported from the Northern District of Mississippi into the Western District of Tennessee, Western Division.

"Members of the jury, an act is done knowingly if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason . . . .." Trial Transcript at 3664–3665.

15. The district judge instructed the jury that

"if you find that the defendant Mitchell turned over blasting caps to Webster with knowledge that Webster intended forthwith to transport such blasting caps from the State of Mississippi to the Western District of Tennessee, Western Division, and that the caps were forthwith so transported, then you may find that defendant Mitchell knowingly caused the blasting caps to be transported in interstate commerce as charged in the . . . indictment."
Trial Transcript at 3665–3666.

16. "Members of the jury, as you know, there has been evidence in this case to the effect that the defendant Mitchell refused to give his voice exemplar for the purpose of making a comparison between his known voice characteristics and the voice contained on certain tapes obtained by the Government . . . ..
I charge you that such conduct on the part of a defendant, if you find that the defendant

evidence before the jury that Mitchell was cited for contempt. Trial Transcript at 2223–2227, 3424–3425. Evidence that Mitchell refused to comply with the court order, of course, is admissible. See United States v. Nix, 465 F.2d 90, 93 (5th Cir.), cert. denied, 409 U.S. 1013, 93 S.Ct. 455, 34 L.Ed.2d 307 (1972); Higgins v. Wainwright, 424 F.2d 177 (5th Cir.), cert. denied, 400 U.S. 905, 91 S.Ct. 145, 27 L.Ed.2d 142 (1970); United States v. Parhms, 424 F.2d 152 (9th Cir.), cert. denied, 400 U.S. 846, 91 S.Ct. 92, 27 L.Ed.2d 83 (1970); see also United States v. Stembridge, 477 F.2d 874 (5th Cir. 1973).

■ Mitchell claims error in the admission of evidence of six other crimes, particularly evidence that he attempted to conspire to kill a government witness. Evidence of such attempted conspiracy, with proper cautionary instructions,[17] is admissible as showing "consciousness of guilt." United States v. Cirillo, 468 F.2d 1233, 1240 (2d Cir. 1972), cert. denied, 410 U.S. 989, 93 S.Ct. 1501, 36 L.Ed.2d 188 (1973); United States v. Alberti, 470 F.2d 878 (2d Cir. 1972), cert. denied, 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973). Evidence of the later interstate transportation of explosives (blasting caps) was proper as showing "scheme or plan, motive, knowledge, intent, absence of mistake or accident, [or] identity." Manning v. Rose, 507 F.2d 892 (6th Cir. 1974). Although the district judge should have cautioned the jury concerning the limited purpose of such evidence, *Manning, supra,* fn. 2, we decline to find plain error in the district judge's failure to so instruct. United States v. Salter, 346 F.2d 509, 512 (6th Cir. 1965), cert. denied, 383 U.S. 943, 86 S.Ct. 1196, 16 L.Ed.2d 206 (1966); see United States v. Minyard, 461 F.2d 931, 933–934 (9th Cir. 1972); United States v. Johnson, 415 F.2d 655–656 (9th Cir. 1969), cert. denied, 396 U.S. 1019, 90 S.Ct. 588, 24 L.Ed.2d 511 (1970); Baker v. United States, 310 F.2d 924 (9th Cir. 1962), cert. denied, 372 U.S. 954, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963). Such transportation, being malum prohibitum, would be unlikely to inflame the jury. Moreover, although Mitchell's counsel objected to several aspects of the jury instructions, he apparently was satisfied with the lack of a cautionary instruction.

Mitchell claims that the one-year delay between his arrest and his trial violated his constitutional right to a speedy trial. In balancing the four factors enunciated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), particularly in light of Trigg v. State, 507 F.2d 949 (6th Cir. 1974), we find no denial of such right. First, the 28-volume transcript, compiled over sixteen trial days, indicates that the trial involved complex charges rather than charges of "an ordinary street crime." See *Barker, supra,* 407 U.S. at 531, 92 S.Ct. 2182. Moreover, the length of the pre-trial delay was considerably less than

---

Mitchell did refuse to give his voice exemplar . . . is not of course sufficient in itself to establish his guilt. But [it is a fact] which, if proved, may be considered by the jury in the light of all the other evidence, in the case in determining guilt or innocence. Whether or not evidence of such conduct shows a consciousness of guilt and the significance to be attached to any such evidence are matters exclusively within the province of the jury. In your consideration of this evidence, you should consider there may be reasons for this which are fully consistent with innocence. These may include lack of trust in the validity of the voice exemplar test. Let me also suggest to you that feeling of guilt does not necessarily reflect actual guilt. The jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence." Trial Transcript at 3683–3684.

17. "I charge you that such conduct on the part of a defendant, if you find that the defendant Mitchell . . . did take some action for the purpose of doing away with said witness, after he was accused of this crime, is not of course sufficient in itself to establish his guilt. But [it is a fact] which, if proved, may be considered by the jury in the light of all the other evidence in the case in determining guilt or innocence. Whether or not evidence of such conduct shows a consciousness of guilt and the significance to be attached to any such evidence are matters exclusively within the province of the jury . . . . Let me also suggest to you that feeling of guilt does not necessarily reflect actual guilt." Trial Transcript at 3682–3683.

the delay of more than two years prior to the trial of the "ordinary street crime" in *Trigg*. Second, at least part of the delay can be attributed to Mitchell's pretrial maneuvering and, in particular, to his refusal to comply with the court order requiring him to submit a voice exemplar. Third, although the courts have rejected the doctrine of requiring the assertion of the right to a speedy trial, asserting such a right remains relevant. *Barker, supra*, 407 U.S. at 524–529, 92 S.Ct. 2182. The government has argued that at no time prior to his trial did Mitchell assert such right; Mitchell, in arguing that the demand doctrine has ·been rejected, apparently accepts the government's factual claim. Fourth, Mitchell has made no showing whatsoever that the delays impaired his defense.

■ The claim that the district judge should have recused himself from trying Mitchell is untenable. First, there is no showing that Mitchell's attorney of record certified the good faith of Mitchell's affidavit claiming bias and prejudice. United States v. Thomas, 299 F.Supp. 494, 500 (E.D.Mo.1968). Second, even assuming procedural compliance with 28 U.S.C. § 144 (1970), Mitchell's allegations that the district judge had cited him for contempt at best demonstrate judicial, as opposed to personal,

bias. Oliver v. Michigan State Bd. of Educ., 508 F.2d 178 (6th Cir. 1974); United States v. Roca-Alvarez, 451 F.2d 843, 848 (5th Cir. 1971); Hanger v. United States, 398 F.2d 91, 100–101 (8th Cir. 1968), cert. denied, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969); United States v. Garrison, 340 F.Supp. 952, 956–957 (E.D.La.1972). Third, much of Mitchell's affidavit contains "scurrilities and generalities [which fall] far short of the specificities required by statute." Griffith v. Edwards, 493 F.2d 495, 496 (8th Cir. 1974); Martelli v. City of Sonoma, 359 F.Supp. 397, 400 (N.D.Cal.1973).

■ Mitchell also contends, without making any specific claim of prejudice, that the district judge erred in excusing a juror midway through the trial with "no more than a cursory examination" into the juror's illness and that a district court standing order [18] prohibiting the unauthorized post-verdict questioning of jurors violates his constitutional right to a trial by jury. The record [19] conclusively demonstrates that the district judge properly excused the juror. See Fed.R.Crim.P. 24(c); United States v. Cameron, 464 F.2d 333 (3rd Cir. 1972); United States v. Garafolo, 385 F.2d 200, 207–208 (7th Cir. 1967), vacated and remanded on other grounds, 390 U.S. 144, 88 S.Ct. 841, 19 L.Ed.2d 970

---

**18.** "It appearing to the Judges of this Court that the post-verdict interrogation of jurors in furtherance of a fishing expedition in an effort to find material to impeach the verdict by testimony of a juror should be prohibited;

"It is, therefore, ordered that no attorney, party or representative of either may interrogate a juror after the verdict has been returned without prior approval of the Court. Approval of the Court shall be sought only by an application made by counsel orally in open court or upon written motion which states the grounds and the purpose of the interrogation.

"It is further ordered that if a post-verdict interrogation of one or more members of the jury should be approved, the scope of the interrogation and other appropriate limitations upon the interrogation may be prescribed at the time that the approval is granted by the presiding judge." Accord, N.J.Rev. Rule 1:25(a) (——).

**19.** "THE COURT: The sergeant indicates that one of the jurors has a problem.

"Is it you, ma'am?
"THE JUROR: Yes, sir.
"THE COURT: What is it?
"THE JUROR: I guess it is my nerves. My head is dizzy, and I am nauseated.
"THE COURT: Will you gentlemen approach the bench a minute? . . .
"THE COURT: Do you want to excuse her?
"[MITCHELL'S ATTORNEY]: No, sir, I don't . . .
"THE COURT: Let me ask you this, ma'am: Do you think your physical condition is such that it is going to make it difficult for you to continue to listen to these witnesses and follow the proof?
"THE JUROR: Yes, sir, I think so . . .

"THE COURT: I will say that she doesn't look well to me . . . I will go ahead and excuse her.
"[MITCHELL'S ATTORNEY]: I want to note my exception to that.
"THE COURT: All right."
Trial Transcript at 1610–1613.

(1968); United States v. Ellenbogen, 365 F.2d 982, 989 (2d Cir. 1966), cert. denied, 386 U.S. 923, 87 S.Ct. 892, 17 L.Ed.2d 795 (1967). Moreover, it is well established that trial judges exercise their discretion in permitting the post-verdict interrogation of jurors. United States v. Stacey, 475 F.2d 1119 (9th Cir. 1973); Miller v. United States, 403 F.2d 77 (2d Cir.), dismissing appeal from 284 F.Supp. 220 (D.Conn.1968); United States v. Driscoll, 276 F.Supp. 333, 336–339 (S.D.N.Y.1967), rev'd on other grounds, 399 F.2d 135 (2d Cir. 1968). But see Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966).

Though Mitchell has claimed other reversible error, we have found those claims to be similarly lacking in merit.

Affirmed.