825 F.2d 412
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Orville Albert Weigelt (86-5822), Howard Emmet Bramblett
(86-5980), Ronald Raymond Schroeder (86-5992),
Defendants-Appellants.
 Nos. 86-5822, 86-5980 and 86-5992
 United States Court of Appeals, Sixth Circuit.
 Aug. 4, 1987.
 
 Before KENNEDY and NELSON, Circuit Judges, and WEBER, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants-appellants Orville Albert Weigelt ('Weigelt'), Howard Emmet Bramblett ('Bramblett'), and Ronald Raymond Schroeder ('Schroeder'), appeal their convictions on various counts of an eighteen-count indictment that charged twenty defendants with violations relating to conspiracy and the manufacture and transportation of illegal explosive devices in violation of 18 U.S.C. Secs. 371, 842(a)(3)(A), and 842(a)(1). Defendant Weigelt claims on appeal that he was denied his right to choice of counsel, to effective assistance of counsel, and to confront witnesses, due to his representation by another defendant's attorney. He also claims that there was insufficient evidence to support the verdict of guilty. Defendant Bramblett claims primarily that the District Court erred in denying his motion to dismiss on double jeopardy grounds and in directing that he proceed to trial despite his appeal from the denial of that motion. In addition, he claims that the District Court erred in allowing his name to remain in factual allegations and overt acts contained in the conspiracy count. Defendant Schroeder raises ten errors on appeal, among them that there was insufficient evidence to support his conviction and that he was improperly joined for trial with the other defendants. For the reasons stated below, we affirm.
 
 
 2
 On May 27, 1983, a fireworks factory in Benton, Tennessee, exploded and killed eleven people who were working in the factory. Evidence recovered at the scene indicated that illegal explosives were being manufactured. The owner of the factory, Dan Lee Webb ('Webb'), pleaded guilty to various charges and received a ten-year sentence and $10,000 fine. He cooperated with the Bureau of Alcohol, Tobacco, and Firearms, and the investigation ultimately led to the indictment of twenty people who were allegedly involved in a conspiracy to manufacture, transport, and deal in illegal explosives without a federal license. On August 27, 1985, an eighteen-count indictment was returned that charged twenty defendants with violations of 18 U.S.C. Secs. 371, 842(a)(3)(A), and 842(a)(1). All but four of the defendants pleaded guilty. In addition to the three parties to this appeal, John Franklin Miller ('Miller') went to trial. After a seven day trial, defendant Weigelt was convicted of aiding and abetting in the manufacture of illegal explosives in violation of 18 U.S.C. Sec. 842(a)(1) and of conspiracy to violate the same in violation of 18 U.S.C. Sec. 371. Defendant Bramblett was convicted of one count of aiding and abetting in the manufacture of illegal explosives in violation of section 842(a)(1), fifteen counts of aiding and abetting in the transporting of explosives in interstate commerce in violation of section 842(a)(3)(A), and one count of dealing in explosive materials without a license in violation of section 842(a)(1). Finally, defendant Schroeder was convicted of two counts of aiding and abetting in the transporting of explosives in interstate commerce.
 
 
 3
 According to the testimony of Webb, he had previously operated a worm bait farm at the site in Benton, Tennessee. One of his regular customers was defendant Bramblett. In 1982, Bramblett suggested to Webb that money could be made from the manufacture and sale of M-80 explosives. Webb, along with a friend named David Parks, decided to go into the business with the help of Bramblett. Bramblett helped Webb to obtain the necessary materials and showed Webb and Parks how to manufacture the explosives. The factory began operating and at its peak produced about 100 cases of explosives a week. Webb testified that Bramblett stated that he would be responsible for selling the explosives and that defendant Miller would provide customers. Each case would sell for $160 and Bramblett and Miller would each get $10.
 
 
 4
 Bramblett was allegedly assisting other illegal fireworks factories at the same time and the operators of these factories all testified as government witnesses. The illegal explosives were manufactured in Chattanooga and Cleveland, Tennessee, and in North Carolina and South Carolina. All of these factories were set up under Bramblett's supervision and relied on Miller for customers. Many of the customers who received deliveries testified that they had contacted Miller for purposes of buying the explosives and that they had been given Bramblett's number to obtain them. They then contacted Bramblett and later received the M-80s from one of the operators. In addition, there was testimony that Webb gave advice to the operators on how to manufacture a better product.
 
 
 5
 Defendant Weigelt was involved as the supplier of paper tubes. Webb testified that in 1983, Bramblett took him to Cleveland, Ohio, where they stopped at a phone booth to make contact with the 'tube man.' They met with Weigelt, who sold Bramblett and Webb approximately ten cases of M-80 tubes and two cases of M-100 tubes. Webb later entered Weigelt's name and phone number in his ledger. He testified that he purchased tubes from Weigelt several times after that. He also stated that he discussed with Weigelt the manufacture of aerial bombs. Several other manufacturers also testified regarding their trips to Cleveland to purchase tubes. Robert Day, from South Carolina, stated that on one of these trips he had overheard a conversation between Weigelt and Bramblett about sky bombs. He also testified that Weigelt arranged with him to deliver the tubes through a paper company as thread protectors. In his testimony, defendant Weigelt contradicted the testimony of these witnesses. He claimed that, although he did sell paper tubes to certain persons, he did not know that the tubes he sold in Cleveland were to be used in the manufacture of illegal explosives.
 
 
 6
 Defendant Schroeder was allegedly one of the purchasers of the explosives. Webb testified that in February of 1983, he received an order from Bramblett to deliver fifty cases of explosives to a man named 'Ron' in Chicago. He loaded the cases in his van and, with his brother, William Webb, drove to Chicago. When he reached Chicago, he called 'Ron,' who paid $160 a case for the goods. Webb and his brother each identified defendant Schroeder as the person to whom they had sold the explosives. Webb further testified that he made a second delivery to Schroeder after he was advised by Bramblett that Schroeder was again interested.
 
 DEFENDANT WEIGELT'S CLAIMS
 
 7
 Defendant Weigelt raises three claims on appeal. Two of his claims arise from the fact that his attorney had a scheduling conflict and was unable to attend the first half of trial. The trial date was originally scheduled for November of 1985, but the District Court rescheduled it for January of 1986. Because of an interlocutory appeal by one of the defendants, the government moved for a continuance and the trial was again rescheduled. In March, the court reset the date one more time and trial was scheduled to begin on June 17, 1986. On May 13, defendant Weigelt filed a motion to continue because his attorney had an arbitration hearing in the Court of Common Pleas of Allen County, Ohio, on June 16. The District Court denied defendant's motion, noting that the case had been continued three times and that 'it would be improper to delay this matter any longer.' Joint Appendix at 252.
 
 
 8
 At the pretrial conference before trial, Miller's attorney, Mr. Yoder, informed the court that he would also represent defendant Weigelt until Weigelt's attorney arrived. Mr. Yoder did not state that he was unprepared or ask for a continuance. Weigelt affirmed that Mr. Yoder would be representing him. Joint Appendix at 364. On the day of trial, the court conducted a side-bar conference with attorney Yoder and defendants Miller and Weigelt. The court stated that it wanted to be certain that there was no conflict of interest. Mr. Yoder assured the court that no conflict existed and the two defendants waived any potential conflict problems. Mr. Yoder thus represented both Miller and Weigelt until Mr. Redmond, Weigelt's attorney, appeared.
 
 
 9
 Defendant claims that he was denied his sixth amendment right to choice of counsel by the District Court's denial of his motion to continue. We reject this claim. 'A motion by a criminal defendant for a continuance of the trial until his retained counsel can be present is directed to the sound discretion of the trial court.' Giacalone v. Lucas, 445 F.2d 1238, 1240 (6th Cir. 1971), cert. denied, 405 U.S. 922 (1972). See also Morris v. Slappy, 461 U.S. 1, 11-12 (1983). The trial judge may consider 'the length of delay, previous continuances, inconvenience to litigants, witnesses, counsel and the court, whether the delay is purposeful or is caused by the accused, the availability of other competent counsel, the complexity of the case, and whether the continuance will lead to identifiable prejudice.' Wilson v. Mintzes, 761 F.2d 275, 281 (6th Cir. 1985). The denial of a motion for continuance will be reversed only for an abuse of discretion. Id. In the case before us, the trial had been postponed three times. The case was complex and would involve many witnesses, including several from out of town. In addition, other competent counsel was available. Finally, defendant's counsel did not indicate whether he had informed the state court of the exact trial date and requested a continuance in that proceeding.[1] The District Court's decision to deny Weigelt's motion was not arbitrary.
 
 
 10
 Weigelt next claims that he was denied his right to effective assistance of counsel. In support of this claim he cites only the fact that Mr. Yoder did not cross-examine one government witness on matters relating to Weigelt. He also claims that this failure deprived him of his right to confront witnesses. Under Strickland v. Washington, 466 U.S. 668, 687 (1984), a party claiming ineffective assistance of counsel must prove that the attorney's performance was below an objective standard of reasonableness and that the defendant was prejudiced by the attorney's performance. Mr. Yoder apparently cross-examined other witnesses regarding Weigelt's role in the alleged conspiracy. His failure to cross-examine Webb appears to have been part of defendant's trial strategy. Defendant Weigelt claimed that he had no knowledge that the paper tubes he was selling were being used to manufacture illegal explosives. Webb, on the other hand, had already stated that he discussed the manufacturing of explosives with Weigelt when he picked up the tubes. Further questioning of Webb could have been counterproductive. Defendant has failed to demonstrate either that the performance of Mr. Yoder was unreasonable or that he was prejudiced by Mr. Yoder's representation. Neither has he shown any conflict of interest resulting from Mr. Yoder's representation of the two defendants. Finally, Weigelt was not denied his right of confrontation.
 
 
 11
 We also find defendant Weigelt's last argument on appeal to be without merit. He asserts that there was not sufficient evidence to support the jury's verdict of guilty. In considering the sufficiency of the evidence, '[t]his court's standard of review is 'whether the relevant evidence viewed in the light most favorable to the government could be accepted by a reasonably-minded jury as adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt." United States v. Scaife, 749 F.2d 338, 347 (6th Cir. 1984) (quoting United States v. Meyers, 646 F.2d 1142, 1143 (6th Cir. 1981)). Defendant asserts that the mere sale of the paper tubes to the other defendants did not constitute participation in the conspiracy. One becomes a party to a conspiracy, however, when that person aids and abets the conspiracy through sales of goods and has knowledge of and intends to promote the conspiracy. See United States v. Grunsfeld, 558 F.2d 1231, 1236-37 (6th Cir. 1977), cert. denied, 434 U.S. 872 (1977) and 434 U.S. 1016 (1978). There is ample evidence from which the jury could have concluded that defendant Weigelt knew the purpose for which the tubes were purchased and had knowledge of the conspiracy.
 
 DEFENDANT BRAMBLETT'S CLAIMS
 
 12
 Prior to trial, defendant Bramblett moved for dismissal of the indictment against him on double jeopardy grounds. On July 2, 1984, he had been convicted on a four-count indictment in the District of South Carolina for conspiracy and explosives violations. The conspiracy count charged him, along with Robert Day, who was also a defendant in the case before this Court, with conspiracy to engage in the manufacturing of and dealing in explosive materials without a license. The allegations related to Bramblett's involvement with Day's operation in South Carolina. The other three counts charged Bramblett with illegally manufacturing and dealing in explosives and with illegal storage of explosives in South Carolina. After Bramblett filed his motion to dismiss, the government was allowed to nolle pros the conspiracy count in the instant case as to Bramblett. The District Court then denied defendant's motion to dismiss the substantive counts remaining against him. The court found that '[c]ounts two through eighteen of the indictment returned in the instant case are completely different from the four counts contained in the South Carolina indictment. . . . The crimes charged in each count of the indictment are different acts which took place in different places and constitute separately indictable criminal acts.' Joint Appendix at 245. Bramblett filed a notice of appeal to this Court, but the District Court ordered him to proceed to trial nevertheless, finding that 'defendant's interlocutory appeal lacks any colorable foundation and is frivolous.' Id. at 251. Bramblett claims on appeal that the District Court erred in denying his motion without conducting an evidentiary hearing and erred in directing that he proceed to trial despite his pending appeal from the denial.
 
 
 13
 Under Blockburger v. United States, offenses are identical for purposes of double jeopardy claims if the evidence supporting one conviction is sufficient to support a conviction in the other prosecution. 284 U.S. 299, 304 (1932). The offenses of which defendant Bramblett was convicted in the District of South Carolina were entirely different from the offenses with which he was charged in the case before us. The substantive offenses which he aided and abetted went beyond mere agreement and were not one and the same with the South Carolina conspiracy. The District Court did not err in denying defendant's motion to dismiss, nor did it err in directing that defendant proceed to trial despite his filing of a notice of appeal. This Court has held that where the trial court finds that a double jeopardy claim is frivolous, the court may order that the defendant proceed to trial despite an appeal from the denial of defendant's motion to dismiss. See United States v. Lanci, 669 F.2d 391, 394 (6th Cir.), cert. denied, 457 U.S. 1134 (1982). The District Court reasonably concluded that defendant Bramblett's double jeopardy claim 'lacked any 'colorable foundation." Id.
 
 
 14
 Defendant Bramblett finally claims that the District Court should not have allowed his name to remain in the factual allegations and delineation of overt acts in the conspiracy count. The court ordered only that Bramblett's name be stricken from the charging paragraph of the conspiracy count. Defendant claims that he was prejudiced by the court's denial of his motion to strike his name throughout the indictment. The factual allegations of the indictment could not be set out without using Bramblett's name, however, as he was the principal organizer of the explosives operations and one of the links between the other defendants. Moreover, the District Court did instruct the jury that only defendants Miller, Schroeder, and Weigelt were charged with conspiracy and that the indictment was not evidence of any kind against defendant Bramblett. Finally, the government presented overwhelming evidence of Bramblett's role in the operation. Defendant was not prejudiced by the appearance of his name in parts of the conspiracy count of the indictment.
 
 
 15
 Bramblett raises three other claims before this Court, but he does not present any argument in support thereof and he states that the 'thrust of this appeal is as set forth in Issues 1 through 3.' Brief of Appellant Bramblett at 13. He claims that the District Court erred in failing to reiterate proper instructions to the jury when they returned with a question, that the court should have granted his motion to dismiss and/or for acquittal, and that the court erred in denying his motion for a new trial on the ground that the verdict was against the weight of the evidence. These claims are without merit.
 
 DEFENDANT SCHROEDER'S CLAIMS
 
 16
 Defendant Schroeder raises ten claims on appeal, all of which are meritless. Schroeder first attacks the sufficiency of the evidence, asserting that the jury's verdict was contrary to the weight of the evidence and that the District Court should have granted his motion for judgment of acquittal. Defendant was convicted of two counts of aiding and abetting in the transporting of explosives in interstate commerce in violation of 18 U.S.C. Sec. 842(a)(3)(A). With regard to that provision, this Court has held that '[a]s long as one puts in motion forces resulting in the interstate transportation of explosive devices, he has 'caused' their interstate transportation.' United States v. Franks, 511 F.2d 25, 35 (6th Cir.), cert. denied, 422 U.S. 1042 and 422 U.S. 1048 (1975). The government presented evidence that Schroeder placed orders for explosives with Webb through Bramblett and that Webb then transported the explosives from Tennessee to Chicago, Illinois, where Schroeder picked them up. There was sufficient evidence to support the jury's conclusion that defendant Schroeder's orders had caused the interstate transportation of the explosives.
 
 
 17
 Defendant Schroeder next claims that the District Court erred in denying his motion to dismiss for improper venue. Under 18 U.S.C. Sec. 3237, '[a]ny offense involving . . . transportation in interstate or foreign commerce . . . is a continuing offense and . . . may be inquired of and prosecuted in any district from, through, or into which such commerce . . . moves.' The District Court clearly had jurisdiction over the charges that defendant had illegally caused the interstate transportation of the explosives. See Franks, 511 F.2d at 35.
 
 
 18
 Schroeder's fifth claim is that the court erred in refusing to charge the jury concerning informal immunity of government witnesses. The testimony of the Webb brothers was the main evidence linking Schroeder to the transportation of explosives. Defendant claims that the court should have instructed the jury regarding their credibility as government witnesses. The court did, however, instruct the jury that the testimony of accomplices must be received with caution. '[T]here is no significant distinction between a cautionary instruction on the testimony of an accomplice and a cautionary instruction on one granted immunity.' United States v. Morgan, 555 F.2d 238, 243 (9th Cir. 1977). We find that the court's refusal to give an immunized witness instruction was not error in light of the cautionary instruction it did give.
 
 
 19
 Defendant next asserts that he was improperly joined for trial with the other defendants under Fed. R. Crim. P. 8 and that the District Court erred in denying his motion to sever under Rule 14. Rule 8(b) provides that '[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.' Despite the fact that Schroeder was ultimately acquitted of the conspiracy charge, he was charged with participation in the same series of acts or transactions as the other defendants. His joinder was proper. Defendant was entitled to relief from the joinder under Rule 14 only if he was prejudiced. See Fed. R. Crim. P. 14. Defendant asserts that he was prejudiced by a 'spillover effect of evidence' and the 'transference of guilt.' Defendant failed to demonstrate, however, that the jury was unable to separate the evidence relating to him from the evidence relating to the other defendants. In fact, the jury acquitted only Schroeder of the conspiracy charge, indicating that it had considered the evidence separately as it was instructed to do. See United States v. Loyd, 743 F.2d 1555, 1564 (11th Cir. 1984). The standard of review of an order refusing to sever is whether the trial court abused its discretion. See United States v. Gallo, 763 F.2d 1504, 1524-25 (6th Cir. 1985), cert. denied, 106 S. Ct. 826, 106 S. Ct. 828, and 106 S. Ct. 1200 (1986). We hold that the District Court's refusal to sever was not an abuse of discretion.
 
 
 20
 Schroeder's eighth assignment of error is the admission of hearsay evidence under the co-conspirator exception to the hearsay rule. See Fed. R. Evid. 801(d)(2)(E). Defendant argues that because the jury ultimately determined that he was not a co-conspirator, the evidence should not have been admitted. In considering admission of the evidence, the District Court was required to find only that participation in the conspiracy was proved by a preponderance of the evidence. See United States v. Enright, 579 F.2d 980, 986 (6th Cir. 1978). Furthermore, the court instructed the jury not to use the statements of others until it was established that defendant was a member of the conspiracy, so there was no prejudice. We reject defendant's claim.
 
 
 21
 Finally, at some point in the trial, the jury apparently asked the court whether it could find defendant Schroeder guilty of transporting the explosives but not guilty of conspiracy. The District Court responded that the jury could do so. Defendant claims that the court erred in refusing to give further clarification to the jury regarding this question and that it erred in allowing the inconsistent verdict to stand. The jury was entitled to find that defendant was guilty of the substantive count but not the conspiracy count and its verdict was not inconsistent.
 
 
 22
 We find the claims of defendants Weigelt, Bramblett, and Schroeder to be without merit. We therefore affirm their convictions.
 
 
 
 *
 The Honorable Herman J. Weber, District Judge, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 It does not appear that counsel for Weigelt ever advised the state court that he was in fact assigned to this criminal trial on June 17, 1986, or that he called to the attention of the state court Rule 7 of the Ohio Supreme Court Rules of Superintendence for Courts of Common Pleas